******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MULLINS, J., with whom KAHN, J., joins, concurring in part and dissenting in part. In my concurring opinion in *State* v. *Douglas C.*, 345 Conn. 421,      A.3d (2022), I explained why I declined to follow the majority in adopting a new rule whereby (1) duplicitous charging of multiple alleged violations of a criminal statute in a single count *necessarily* violates the sixth amendment right to a unanimous jury verdict in the absence of a bill of particulars or specific unanimity instruction, and (2) there is an exception for course of conduct charging, but such charging is constitutionally permissible only when the legislature has expressly authorized it for the specific statute at issue. Id., 472 (*Mullins, J.,* concurring). I believe that this court should instead adopt the more flexible, case-by-case framework used by the United States Court of Appeals for the Second Circuit, among various other federal and sister state courts. That approach makes more sense as a general matter, and, in particular, it better comports with how the state historically has charged repeated sexual assaults on a child.

Because I discussed these matters fully in *Douglas C.*, in this opinion, I will confine my discussion of the governing legal principles to a brief recapitulation. See part I of this opinion. Unlike in *Douglas C.*, however, in the present case, I cannot fully agree with the result of the majority's analysis. Specifically, as I discuss in part II of this opinion, I would affirm the conviction of the defendant, Joseph V., for sexual assault in the first degree, in violation of General Statutes § 53a-70 (a) (2) (child sexual assault).

In addition, as I discuss in part III of this opinion, I believe that juxtaposing our analyses of § 53a-70 (a) (2) and General Statutes § 53-21 (a) (2), the risk of injury to a child provision based on sexual assault, highlights what I see as one important flaw in the majority's approach, namely, its inability to convincingly distinguish between those statutes that purportedly allow for course of conduct charging under General Statutes § 1-2z and those that do not. In my view, child sexual assault and risk of injury to a child, which have been charged hand in hand as continuing offenses for the better part of one century in Connecticut, are indistinguishable with respect to duplicity and the unanimity requirement. For these reasons, I respectfully dissent from part I B of the majority opinion. I concur in the results reached by the majority in part I A and C and part II of its opinion, in which it upholds the defendant's conviction of risk of injury to a child in violation of § 53-21 (a) (2) and conspiracy to commit risk of injury to a child in violation of § 53-21 (a) (2) and General Statutes § 53a-48 (a).

In *Douglas C.*, I discussed at some length my disagreement with the majority as to the law that governs claims of duplicity and related constitutional issues with respect to cases in which the state charges in one count multiple violations of a single statutory provision. See *State* v. *Douglas C.*, supra, 345 Conn. 478–500 (*Mullins, J.*, concurring); see also id., 448 (outlining majority's three step test but also noting exception for permissibly charged course of conduct). As I noted in *Douglas C.*, "[m]uch of the difference between my view and that of the majority centers on how to treat course of conduct charging. The framework I would have us adopt when assessing whether charging multiple instances in a single count is permissible or impermissible is the following four step approach: First, pursuant to . . . § 1-2z, if the statute at issue either expressly permits or expressly bars course of conduct charging, or if there are other *clear* indicia of legislative intent, then courts must defer to the legislative will. Second, if the statute at issue is silent as to course of conduct charging, and there are no other clear indicia of legislative intent, as will most often be the case, then the prosecutor has the discretion to charge repeated violations of the statute as individual incidents or as a single course of conduct. Third, notwithstanding the prosecutor's charging decision, the trial court should determine whether such charging (1) would be unreasonable or unfair under the circumstances or (2) would otherwise violate the defendant's fifth and sixth amendment (and corresponding state constitutional) rights to notice, to present a defense, to a unanimous jury verdict, and to not twice be placed in jeopardy for the same offense, among others. Such determinations must be made on a case-by-case basis. If, at trial, the judge concludes that there is potential for unfairness or a constitutional violation, then the judge should not permit course of conduct charging and should either order that the charges be separated or give an instruction to the jury that it must be unanimous as to at least one specific incident. Fourth, if an appellate court, on review, concludes that the trial court should not have permitted course of conduct charging, either because the defendant's conduct cannot fairly be characterized as a single scheme or pattern under the statute at issue, or because the constitutional rights that underlie the rule against duplicity were not adequately secured, then the trial court's determination is subject to harmless error analysis." (Emphasis in original; footnote omitted.) Id., 474–76 (*Mullins, J.*, concurring).

As I further detailed in *Douglas C.*, there are numerous reasons why I believe that the more flexible Second Circuit approach to charging multiple instances cases is to be preferred over the more formulaic approach that the majority adopts, particularly in cases such as

this. See id., 484–97 (*Mullins, J.*, concurring). Rather than rehash all those reasons here, I highlight one, which is that following the approach I favor, in my view, more appropriately serves the interests both of the child victim (who may be unable to testify as to the dates and details of particular assaults with sufficient precision to differentiate them) and of the defendant (by avoiding the needless cumulation of charges and potential sentences). The majority's approach, in contrast, will do as much to penalize as to protect criminal defendants and will make it virtually impossible to prosecute many child molestation cases, among other heinous crimes, contrary to the clearly stated intent of the legislature to protect young children. That is an unfortunate reality of the majority's position and one I do not think is warranted, either practically or under the law. I decline to follow it.[1]

## II

Applying the framework I propose to the defendant's sexual assault conviction under count one, I conclude, contrary to the majority, that the charge was not impermissibly duplicitous and that his constitutional rights were not infringed. Accordingly, I would affirm the conviction.

The first step in the analysis is to consider the language of the statute, pursuant to § 1-2z, to ascertain whether the legislature has directly addressed the question of whether repeated violations of § 53a-70 may be charged as one continuing offense. Section 53a-70 (a) (2), the first degree sexual assault statute, provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ." The statute neither expressly authorizes nor expressly prohibits course of conduct charging.[2]

The majority states that "we can infer from the legislature's use in other statutes of the phrase 'course of conduct,' as well as other phrases that connote more than one act, that the legislature knows how to criminalize a course of conduct when it wants to do so. From the fact that the legislature did not do so in § 53a-70, we may infer that it did not intend to criminalize a continuous course of conduct." (Footnotes omitted.) Part I B of the majority opinion. To support this point, the majority cites to General Statutes § 53a-181d, the second degree stalking statute, as an example of a statute in which the legislature did expressly authorize course of conduct charging. See footnote 13 of the majority opinion.

But stalking, by definition, *has to be* a course of conduct crime. The legislature included the terms "course of conduct" in the second degree stalking statute; Gen-

eral Statutes § 53a-181d (b) (1) and (2); and "repeatedly" in the third degree stalking statute; General Statutes § 53a-181e (a) (2); to make clear that an individual cannot stalk someone by following or harassing them just once. There is no reason to expect that the legislature would include language imposing that same requirement in every statute that, like § 53a-70, merely can be a continuing offense.

Even more to the point, however, our legislature also has demonstrated expressly that it knows how to say, in no uncertain terms, when an ongoing crime has to be charged as discrete infractions. A good example of a Connecticut statute demonstrating this legislative knowledge is General Statutes § 15-173 (b), which, for docking violations, imposes a daily fine of up to $10,000 and expressly provides that "[e]ach violation shall be a separate and distinct offense, and, in the case of a continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense." Another example is General Statutes § 22a-226 (a), which uses substantially the same language with respect to civil penalties for violations of solid waste management law. There is no language like that in our first degree sexual assault and child sexual assault statutes. Our legislature has thus clearly demonstrated that it knows the difference between a single violation of a statute and a continuing violation and that it knows how to say so expressly when an ongoing crime has to be charged as discrete infractions. When, as in the case of child sexual assault, the legislature has not spoken specifically on the issue, course of conduct charging is, therefore, left to the discretion of the prosecutor, subject always to the oversight of the trial court and the restraints imposed by the federal and state constitutions.

The second step in the analysis is to consider whether the victim's allegations reasonably can be characterized as an ongoing pattern or scheme of misconduct such that course of conduct charging was a proper exercise of prosecutorial discretion. They clearly can. The victim's half brother, T, began regularly sexually abusing the victim when the victim was four or five years old. The defendant began to participate in the assaults, as part of an ongoing conspiracy, when the victim was six or seven years old, and continued to do so until the victim was ten. The victim was able to describe some details of three such incidents involving the defendant, but, for the most part, he was unable to say when the abuse occurred or to provide specific, distinguishing details. In particular, he testified that the assaults "blurred together because there [were] too many to count and distinguish between." He indicated that the assaults occurred "[m]ultiple times" and that they always occurred at his father's home, primarily in his father's or T's bedroom.

In addition, although he was unable to remember any specifics, he did testify that that the assaults typically involved T and the defendant performing the same sexual acts, namely, trying to anally penetrate him or prodding him to perform fellatio or to manually stimulate them. On facts such as these, I have no difficulty concluding that the alleged assaults, involving the same defendant committing the same crimes against the same victim at the same location, were alike enough in nature and motive to constitute a pattern or scheme, such that course of conduct charging was permissible. I believe that our sister courts would agree.[3] The essence of the charged crime was, in short, the ongoing pattern of abuse.

The third step in the analysis is the critical question of whether charging the defendant's various assaults as a single course of conduct violated his sixth amendment right to a unanimous jury verdict. The defendant contends that, insofar as the victim and T offered detailed accounts of four specific sexual assaults, it is impossible to know whether the jury unanimously agreed that he committed any one particular assault. I disagree. Much of the testimony regarding the defendant's alleged sexual assaults of the victim was generic in nature, and the majority in *Douglas C.* concedes that, when generic testimony is at issue, the primary question for the jury is simply the credibility of the complainant and other key witnesses. See *State* v. *Douglas C.*, supra, 345 Conn. 513 (*Mullins, J.*, concurring). In addition, although defense counsel cross-examined the victim and T regarding some of the specific details of the assaults that they described, the defense as to each of those incidents—as well as to all of the generic continuous/repeated sexual abuse testimony—was the same.[4] In such instances, the sixth amendment is not implicated because the crime that is being charged is, in essence, the course of conduct itself. See, e.g., *United States* v. *Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989), cert. denied, 493 U.S. 1081, 110 S. Ct. 1139, 107 L. Ed. 2d 1044 (1990), and cert. denied sub nom. *Guarino* v. *United States*, 493 U.S. 1082, 110 S. Ct. 1139, 107 L. Ed. 2d 1044 (1990); *United States* v. *Margiotta*, 646 F.2d 729, 733 (2d. Cir. 1981). So long as the state can prove that, then all of the essential elements of the statute at issue have been satisfied, and whether the defendant acted in a particular way on a particular day is immaterial; it is simply part of the means by which the criminal scheme was accomplished. In addition, the charge that the trial court gave the jury came very close to a specific unanimity instruction and is consistent with charges that we have approved as giving the jury adequate guidance.[5]

In many such cases, courts of this state and others, regardless of whether they deem course of conduct charging to be impermissibly duplicitous, have concluded that there was no reversible error because the

primary question for the jury was the relative credibility of the complainant and the defendant, and the guilty verdict necessarily meant that the jury had resolved those questions in favor of the complainant. See, e.g., *State* v. *Vumback*, 263 Conn. 215, 229–31, 819 A.2d 250 (2003); *State* v. *Saraceno*, 15 Conn. App. 222, 230–31, 545 A.2d 1116, cert. denied, 209 Conn. 823, 552 A.2d 431, and cert. denied, 209 Conn. 824, 552 A.2d 432 (1988); see also, e.g., *Arizona* v. *Alcantar*, Docket No. 2 CA-CR 2020-0105, 2022 WL 3919832, *8 (Ariz. App. August 31, 2022); *Commonwealth* v. *Sineiro*, 432 Mass. 735, 737–38, 740 N.E.2d 602 (2000); *State* v. *Altgilbers*, 109 N.M. 453, 467–68, 786 P.2d 680 (App. 1989), cert. denied, 109 N.M. 419, 785 P.2d 1038 (1990).

Finally, we must consider whether any of the defendant's fifth amendment rights were violated when the state charged his many alleged assaults on the victim as one course of conduct. As in *Douglas C.*, the substitute information afforded the defendant adequate notice of the charged crimes; there is no potential double jeopardy violation because the state would be precluded from charging the defendant with any additional sexual assaults of the victim during the years in question; and the defendant was not hampered in his ability to present an alibi or other defense, insofar as he indisputably was present at the residence of the victim's father with the victim between 2006 and 2010, when the charged crimes occurred.

Accordingly, applying the Second Circuit framework, I would conclude that, under the facts of the present case, the state did not violate any of the defendant's fifth or sixth amendment rights by charging count one as a continuing course of conduct. I would therefore affirm his conviction of sexual assault in the first degree, in violation of § 53a-70 (a) (2), rather than remand for a new trial.

### III

I have explained in part II why I believe that course of conduct charging of sexual assault in the first degree in count one was appropriate in this case and did not violate the defendant's fifth or sixth amendment rights. A similar analysis applies to the risk of injury to a child and conspiracy charges. To address each of those charges here is unnecessary because I ultimately agree with the majority that counts two and three were not impermissibly duplicitous. I concur in the result reached by the majority in part I A and C and part II of its opinion.

It is important for me to explain why I believe that sexual assault and risk of injury to a child should not be treated differently when it comes to duplicity and unanimity. These crimes are almost always charged together when the abuse is visited on a child, the state has charged them both as continuing offenses for the better part of one century; see part III C of this opinion;

and, in the past, both this court and the Appellate Court have treated them alike for purposes of course of conduct charging. See, e.g., *State* v. *Snook*, 210 Conn. 244, 265, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *William B.*, 76 Conn. App. 730, 761, 822 A.2d 265, cert. denied, 264 Conn. 918, 828 A.2d 618 (2003); *State* v. *Saraceno*, supra, 15 Conn. App. 227–32. I am concerned that the majority's disparate treatment of these two extraordinarily similar statutes is without solid foundation, and I believe that it exposes an important shortcoming in the majority's approach.

The majority advances three possible bases for distinguishing between § 53-21 (a) (2) (risk of injury to a child) and § 53a-70 (a) (2) (first degree sexual assault of a child), such that the former can be a continuing course of conduct crime whereas the latter cannot: (1) the statutory text, (2) the legislative history, and (3) previous holdings of this court and the Appellate Court. I consider each theory in turn.

A

First, the majority suggests that the primary test, under § 1-2z, is whether the statutory language permits course of conduct charging. See part I of the majority opinion; see also *State* v. *Douglas C.*, supra, 345 Conn. 443–44 and n.12. I agree that, if the statutory language expressly permits course of conduct charging, then it is permissible to charge a crime as a continuing course. Similarly, when the statutory language expressly bars course of conduct charging, prosecutors lack the discretion to charge a crime in that manner. In this case, however, neither statute expressly recognizes or criminalizes a continuing course of conduct; nor does either statute expressly preclude course of conduct charging. The majority acknowledges that "the phrase 'contact with the intimate parts' in the risk of injury statute does not appear to clarify whether the statute criminalizes a continuing course of conduct or limits its scope to a single occurrence." *State* v. *Douglas C.*, supra, 464. The same is true of § 53a-70 (a) (2); nothing in the plain language of that statute speaks to course of conduct charging one way or the other.[6] One statute simply prohibits contact with the victim's intimate parts, whereas the other prohibits engaging in sexual intercourse with the victim. Either act of child abuse (or child sexual assault) can just as readily be performed as a single act or on an ongoing basis; the only difference is in the seriousness or intrusiveness of the violation. If anything, the verb "engages," which the legislature used in the child sexual assault statute, is more suggestive of ongoing conduct than is the "having contact" language that defines risk of injury to a child.[7]

The majority's suggestion to the contrary notwithstanding, other state statutes that, like § 53a-70, prohibit sexual intercourse with a child, or use substantially

equivalent language, have been construed to permit course of conduct charging. See, e.g., *Commonwealth* v. *Sineiro*, supra, 432 Mass. 735, 737–38 (rape of child);[8] *State* v. *Altgilbers*, supra, 109 N.M. 455, 464–71 (criminal sexual penetration);[9] *Huddleston* v. *State*, 695 P.2d 8, 10–11 (Okla. Crim. App. 1985) (rape of child).[10] In fact, as I discuss more fully hereinafter, both this court and the Appellate Court have approved prosecutors' decisions to charge repeated sexual assaults as a single course of conduct. See *State* v. *Snook*, supra, 210 Conn. 265–66 (finding no double jeopardy violation because, among other things, state charged second degree sexual assault as continuing course of conduct); *State* v. *William B.*, supra, 76 Conn. App. 761 ("[t]he state properly charged the defendant with a course of sexual conduct" in violation of § 53a-70 (a) (2)); *State* v. *Saraceno*, supra, 15 Conn. App. 227–32 (trial court's refusal to separate sexual assault charges into separate counts did not abridge defendant's right to fair trial).

Put simply, I see no basis in the actual statutory language for treating the two statutes differently. The only distinction is in the type of improper sexual conduct at issue; that is a distinction without a difference.[11]

### B

Second, the majority contends that, insofar as the plain language of § 53-21 (a) (2) is ambiguous, the legislative history indicates that the legislature intended that risk of injury to a child could be charged as a continuing course of conduct. See *State* v. *Douglas C.*, 345 Conn. 466–69. Once again, however, the legislative histories fail to support a distinction between the two statutes and, if anything, support prosecutorial discretion to charge child sexual assault as a continuing offense.

Focusing first on § 53-21 (a) (2), I do not read the majority opinion to have identified any statements in the legislative history that specifically indicate that the legislature intended risk of injury to a child to be chargeable as a continuing course of conduct crime. Rather, I understand the majority simply to be stating that *this court* already had interpreted the prior version of the risk of injury statute to permit charging a continuing course of conduct; see part III C 3 of this opinion; and that there is no indication that the legislature, when it amended § 53-21 in 1995 to add what is now subsection (a) (2), intended to change that interpretation. See *State* v. *Douglas C.*, supra, 345 Conn. 469. So, the issue, ultimately, is one of legislative acquiescence.

As I explained in *Douglas C.*, however, there are two reasons why the legislative acquiescence argument as to § 53-21 is particularly unpersuasive. First, if there was legislative acquiescence in this case, it ratified my approach to the law of duplicity, rather than that of the majority. The pre-1995 decisions of this court that the legislature is alleged to have adopted in 1995, in which

this court approved of the prosecutor's decision to charge a course of conduct in risk of injury matters, decided the course of conduct question primarily on the basis of practical considerations, not as a matter of statutory construction. See part III C 3 of this opinion. Second, because legislators emphasized in 1995 that subdivision (2) of what is now § 53-21 (a) defined a "new" crime, which was contacting a child's intimate parts in a sexual and indecent manner, the legislative history itself contradicts the majority's position. See 38 S. Proc., Pt. 5, 1995 Sess., p. 1766, remarks of Senator Thomas F. Upson. It is true that part of the motivation for the 1995 amendment was to divide the risk of injury statute into sexual and nonsexual parts at that time, so that individuals convicted of inappropriate sexual contact with children could be subjected to mandatory minimum sentences and sex offender registration requirements. See, e.g., 38 H.R. Proc., Pt. 7, 1995 Sess., pp. 2590–91, remarks of Representative James A. Amann. But the bill's sponsor indicated that the legislature was not merely separating out sexual from nonsexual harms to children but was making a "change in the definition of risk of injury . . . so that the offense can be more carefully delineated." 38 S. Proc., supra, pp. 1769–70, remarks of Senator Martin M. Looney.

In addition, unlike the pre-1995 version of the statute, which is now subsection (a) (1), the new, sexual component of the statute, subsection (a) (2), makes no mention of dangerous situations, only of specific acts. The use of the term "situations" is important to the majority's argument as to why risk of injury to a child in general can be charged as a continuing course of conduct. "Situations," it suggests, invokes crimes of an ongoing nature. See footnote 12 of the majority opinion. But subsection (a) (2) is not directed at situations. It is directed solely at *acts* of sexual contact. The fact that the legislature expressly prohibited both dangerous situations and inappropriate acts in subsection (a) (1), but only inappropriate acts in subsection (a) (2), cannot have been accidental. See, e.g., *Rutter* v. *Janis*, 334 Conn. 722, 739, 224 A.3d 525 (2020). Thus, to the extent that the majority relies for its interpretation of § 53-21 on the fact that subsection (a) (1) of the statute prohibits the creation of dangerous situations, such as child neglect, as well as dangerous acts, such as child abuse, and, thus, necessarily envisions ongoing violations as well as individual infractions, the fact that the legislature chose *not to* include the situation language when it created the new subsection (a) (2) addressed to sexual misconduct, and instead used only contact language, would seem to support the opposite conclusion.

Also, it bears noting that the public act that enacted the new risk of injury to a child provision, No. 95-142, § 1, of the 1995 Public Acts (P.A. 95-142), also amended the sexual assault statute, § 53a-70, by increasing the mandatory minimum sentence for first degree sexual

assaults perpetrated against victims under ten years of age. See P.A. 95-142, § 13. As I discussed, there is no indication in the legislative history that the legislature gave any thought at that time to the question of which crimes could or could not be prosecuted as course of conduct crimes. What is clear, however, is that P.A. 95-142 was an integral part of then Governor John G. Rowland's tough on crime legislative package, the stated intent of which was to put more teeth into Connecticut's recently adopted version of Megan's Law and to better protect the public by stiffening the penalties for sex crimes against children. There are statements to that effect throughout the legislative history of the 1995 act.[12] I would thus hesitate to conclude, or to adopt any interpretation of these laws predicated on the view, that the legislature had intended the amended sexual assault statute to be interpreted so that it would be substantially more difficult to prosecute the ongoing sexual abuse of young children. Such a reading would be flatly incompatible with the stated purpose of the 1995 amendments to *both* statutes.

With respect to the legislative history of § 53a-70 (a) (2), that provision of the sexual assault statute was enacted in 1989. See Public Acts 1989, No. 89-359 (P.A. 89-359). The bill's sponsor, Representative Richard D. Tulisano, repeatedly suggested in his introduction of the bill that the intent was to allow the prosecution not only of individual sexual assaults but also of ongoing sexual *relationships* between adults and children, which at least implies a continuing course of conduct.[13] I cannot agree with the majority that the statements of the bill's sponsor introducing the legislation for debate can be dismissed as merely the views of "one legislator," or that Representative Tulisano's references to the problems posed by consensual relationships with fourteen year old children in no way suggest ongoing conduct and are nothing more than "euphemisms for sexual intercourse . . . ." Footnote 18 of the majority opinion.

Accordingly, I see no basis in the history of the two statutes for discerning a clear legislative preference for charging § 53-21 (a) (2) as a course of conduct but not permitting prosecutors to charge § 53a-70 (a) (2) in the same manner, when appropriate. Indeed, that outcome would be bizarre insofar as the two statutes typically are charged together in cases involving the sexual abuse of children, a fact of which the legislature is well aware, and the legislative history is crystal clear that the legislature in both instances sought to do everything within its constitutional means to protect children from sexual abuse and to bring perpetrators to justice.[14] Certainly, nothing in the legislative histories points to any *reason*—and the majority suggests none—why the legislature might have intended to treat the two similar statutes differently for purposes of due process.

C

To summarize, having reviewed the statutory text and the legislative histories of the two statutes at issue pursuant to § 1-2z, the majority fails to identify any clear manifestation of a legislative intent to distinguish between risk of injury to a child based on sexual contact and child sexual assault, such that prosecutors were to have discretion over how they charge the former statute but not the latter.[15] Ultimately, rather, the majority settles on a sort of legislative acquiescence theory, whereby it concludes that this court has distinguished between the two laws for purposes of course of conduct charging and the legislature has, in effect, ratified that distinction.[16] For various reasons, I am unpersuaded.

In support of its argument, the majority relies on two different lines of appellate cases, one addressing § 53a-70, discussed in part III C 1 of this opinion, and one addressing § 53-21, discussed in part III C 3. Neither line of cases justifies distinguishing between child sexual assault and risk of injury to a child for purposes of charging a continuous offense.

1

With respect to § 53a-70, the majority looks to a line of appellate cases that addresses a fundamentally different legal question, essentially the opposite question, in fact. As I discussed in *Douglas C.*, at common law, pleadings could be improper for duplicity (pleading multiple causes of action in one count) or, conversely, for multiplicity (pleading one cause of action in multiple counts). See *State* v. *Douglas C.*, supra, 345 Conn. 481–82, 495 (*Mullins*, *J.*, concurring). In the criminal context, this means that defendants often will have at least a colorable appellate claim, regardless of which way a prosecutor chooses to charge the case, when multiple incidents are involved. If, as here, an ongoing series of sexual assaults of the same degree is charged as a single course of conduct, the defendant may claim that the charge was erroneous for duplicity and violated his right to a unanimous verdict. By contrast, in those cases in which the prosecutor charges each incident of child abuse as a separate offense, defendants often claim that the charge was erroneous for multiplicity, in effect, that the state improperly charged one ongoing crime in multiple counts, placing the defendant in double jeopardy and unfairly imposing multiple sentences.

What the majority relies on for its interpretation of the sexual assault statute, almost exclusively, is that latter category of cases, in which a defendant sexually abused a victim multiple times, was convicted of multiple crimes, and then complained that there should have been only one conviction, one sentence. See, e.g., *State* v. *Anderson*, 211 Conn. 18, 25, 557 A.2d 917 (1989); *State* v. *Frazier*, 185 Conn. 211, 228–30, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982);[17] *State* v. *Ayala*, 154 Conn. App.

631, 654–55, 106 A.3d 941 (2015), aff'd, 324 Conn. 571, 153 A.3d 588 (2017); *State* v. *Giannotti*, 7 Conn. App. 701, 708–709, 510 A.2d 451, cert. denied, 201 Conn. 804, 513 A.2d 700 (1986); *State* v. *Cassidy*, 3 Conn. App. 374, 388–89, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985). To make that claim, the defendants in those cases had to argue that, under the unique circumstances of those cases,[18] rape, sexual assault, or the other crimes at issue could be charged only as course of conduct crimes. We have roundly rejected such claims, concluding that the minimal unit of prosecution for sexual assault is the individual infraction. To read the statute otherwise, we have explained, would lead to absurd results: if prosecutors do not have the option to charge each infraction separately, then an offender, having initially assaulted a victim, could "commit with impunity many other such acts during the same encounter." *State* v. *Frazier*, supra, 229.

None of this says anything about whether child sexual assault *can be* charged as a course of conduct when that makes the most sense, only that it does not *have to be* charged that way. Although the majority quotes some language from those cases out of context, at no point does the majority explain why, as a matter of principle, the outcomes of our multiplicity cases should govern these duplicity cases, which present a fundamentally different question. The majority's response, that the meaning of the statutory language does not change with the nature of the claim, although of course true, misses the point. See part I B of the majority opinion. We are addressing two distinct legal questions. One goes to the minimal unit of prosecution permitted by the statute: is the state permitted to charge multiple assaults, committed in close proximity, as multiple crimes, or is it required to charge only one offense? The other goes to whether the state is permitted to charge a series of similar assaults, committed over time, as one offense, or whether it is required to charge them as separate offenses. Just as the minimum sentence imposed by a criminal statute says nothing about the maximum allowable sentence (that is a different question of statutory interpretation), the minimum unit of prosecution authorized by statute does not resolve the question of whether charging multiple acts by continuando is also permissible.

Indeed, numerous federal courts of appeals and sister state courts have considered and expressly rejected the very argument that the majority makes here, that the fact that a single infraction is the minimal unit of prosecution for purposes of a multiplicity/double jeopardy challenge means that a crime cannot also be charged, in the discretion of the state, as a course of conduct. See, e.g., *United States* v. *Root*, 585 F.3d 145, 153–55 and n.5 (3d Cir. 2009); *United States* v. *Anson*, 304 Fed. Appx. 1, 4 (2d Cir. 2008), cert. denied, 556 U.S. 1160, 129 S. Ct. 1687, 173 L. Ed. 2d 1050 (2009); *United States*

v. *King*, 200 F.3d 1207, 1212–13 (9th Cir. 1999); *United States* v. *Bruce*, 89 F.3d 886, 889 (D.C. Cir. 1996); *State* v. *Lente*, 453 P.3d 416, 430 (N.M. 2019).

Notably, this court has quoted the exact same language from *Frazier* on which the majority relies for its interpretation of § 53a-70 in rejecting a multiplicity challenge to the risk of injury statute. See *State* v. *Snook*, supra, 210 Conn. 261–62 ("In [*Snook*], the separate counts alleging risk of injury to a [child] arose out of separate acts. . . . As we stated in an analogous context, 'each separate act of forcible sexual intercourse constitutes a separate crime. . . . A different view would allow a person who has committed one sexual assault [on] a victim to commit with impunity many other such acts during the same encounter.' " (Citations omitted.)). I fail to see why precisely the same language and legal analysis preclude course of conduct charging of sexual assault but not in the case of risk of injury to a child.

2

While quoting at length from these multiplicity cases, the majority largely disregards the line of appellate cases that are on point, namely, our duplicity cases. This court and the Appellate Court have directly or indirectly addressed the actual question presented here, whether child sexual assault can be charged as a course of conduct in the discretion of the state, in a series of decisions that approved prosecutors' decisions to charge the sexual assault of children as a course of conduct crime.

In *State* v. *Silver*, 139 Conn. 234, 93 A.2d 154 (1952), for example, this court relied on the fact that a predecessor statute had been charged as a continuing course of conduct in affirming the conviction. See id., 247 (*O'Sullivan, J.*, concurring); see also *State* v. *Snook*, supra, 210 Conn. 265 (relying on fact that state had charged sexual assault based on "a number of episodes in which the defendant engaged in sexual intercourse with the victim" to reject double jeopardy challenge). Accordingly, we have, at least implicitly, deemed such charging to be proper.

Several panels of the Appellate Court also have concluded that sexual assault may be charged as a continuing course of conduct crime without offending a defendant's constitutional rights. For example, in *State* v. *Saraceno*, supra, 15 Conn. App. 222, a case involving multiple instances of sexual assault charged in one count, the Appellate Court adopted the rule articulated by the Second Circuit in *Margiotta*, stating that "[a] single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses. . . . Rather, such a count is . . . duplicitous [only when] the policy considerations underlying the doctrine are implicated. . . . These

[considerations] include . . . avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged . . . .''[19] (Citations omitted; internal quotation marks omitted.) Id., 228–29.

With respect to the defendant's contention that, at the very least, he should have been provided with a bill of particulars, the Appellate Court in *Saraceno* explained that, "in a case involving the sexual abuse of a very young child, that child's capacity to recall specifics, and the state's concomitant ability to provide exactitude in an information, are very limited. The state can . . . provide [only] what it has. This court will not impose a degree of certitude as to date, time and place that will render prosecutions of those who sexually abuse children impossible. To do so would have us establish, by judicial fiat, a class of crimes committable with impunity." Id., 237. This court adopted that language in *State* v. *Stephen J. R.*, 309 Conn. 586, 72 A.3d 379 (2013), adding that "testimony from a child victim describing a series of indistinguishable acts by an abuser who has ongoing access to the child is often the only evidence that the child is able to provide." Id., 596.

Notably, the Appellate Court's conclusion in *Saraceno* was that there simply was no error in the state's duplicitous charging of sexual assault in the second degree—"the trial court did not err in its denial of the defendant's motion to separate"—and not that there was harmless, nonprejudicial error.[20] *State* v. *Saraceno*, supra, 15 Conn. App. 232; see *State* v. *Vere C.*, 152 Conn. App. 486, 508–13 and n.6, 98 A.3d 884, cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014); *State* v. *Jessie L. C.*, 148 Conn. App. 216, 226–33, 84 A.3d 936, cert. denied, 311 Conn. 937, 88 A.3d 551 (2014); *State* v. *Marcelino S.*, 118 Conn. App. 589, 592–97, 984 A.2d 1148 (2009), cert. denied, 295 Conn. 904, 988 A.2d 879 (2010); see also *State* v. *William B.*, supra, 76 Conn. App. 761 ("[t]he state properly charged the defendant with a course of sexual conduct" in violation of § 53a-70 (a) (2)).

### 3

I also disagree with the majority's discussion of this court's risk of injury to a child jurisprudence and how our analysis of the course of conduct charging question as to § 53-21, over time, bears on the meaning of § 53a-70. Contrary to the majority's suggestion, when we initially determined that a series of violations of the risk of injury statute can be charged either as individual infractions or as a single course of conduct, it appears to me, given that this court never construed the language of the statute in the opinion, we reached that conclusion not as a matter of statutory interpretation but, rather, primarily as a policy matter. This is consistent with the history that I set forth in my concurrence in *Douglas C.*, which indicates that the law of duplicity originated at common law as a set of rules governing the pleading process; only more recently have constitu-

tional and statutory concerns also emerged as important considerations. See *State* v. *Douglas C.*, supra, 345 Conn. 477 n.6, 480–83 and n.11 (*Mullins, J.*, concurring).

The case in which this court first recognized that a continuing course of conduct could be charged under a pre-1995 version of the risk of injury statute was *State* v. *Hauck*, 172 Conn. 140, 374 A.2d 150 (1976). The defendant in that case challenged the court's denial of his motion for a supplemental bill of particulars when the state charged him with violating § 53-21 " 'on or about divers dates' " between November 11, 1971, and June, 1972. Id., 150. This court's conclusion in that case, that "[t]he offenses charged . . . were obviously of a continuing nature," made no reference to the statutory language, the legislative history of § 53-21, or any other indicia of legislative intent. Id.

Rather, in deferring to the trial court's discretion in allowing course of conduct charging, this court relied on purely practical considerations—that the charges were "clearly reasonable" in light of the trial testimony; id., 151; and, importantly, that "it would have been virtually impossible to provide the many specific dates [on] which the acts constituting the offenses occurred"—as well as the general principle that, when "time is not of the essence or gist of the offense, the precise time at which it is [alleged] to have been committed is not material." Id., 150. In other words, the considerations that first led this court to permit prosecutors to charge risk of injury to a child as a course of conduct crime, as a matter of judge made law, were exactly the same practical considerations that would support the same result with respect to sexual assault in cases such as this.

In subsequent cases, this court has continued to rely on *Hauck* and, specifically, on the pragmatic rationales that we articulated therein. See, e.g., *State* v. *Spigarolo*, 210 Conn. 359, 391, 556 A.2d 112 (citing *Hauck* for proposition that, "[b]ecause the state was unable to specify with greater precision the times of the alleged incidents, it necessarily proceeded under a theory that the defendant's conduct was in the nature of a continuing offense"), cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). If the legislature has, in the intervening years, placed its imprimatur on cases such as *Hauck* and *Spigarolo*, as the majority suggests, then it has endorsed not a statutory analysis of the meaning of § 53-21—our cases offered no such analysis—but, rather, the very framework that I am supporting and that I would apply to sexual assault, under which the state has the discretion to charge a course of conduct when appropriate.

4

Finally, as I explain in *Douglas C.*, if there is any legislative acquiescence argument to be made here, it

is in favor of course of conduct charging under both statutes. See *State* v. *Douglas C.*, supra, 345 Conn. 507–509 (*Mullins, J.*, concurring). There is a long, consistent, well documented history of Connecticut prosecutors exercising their discretion to charge multiple instances of child sexual assault occurring on divers dates in one count. In such cases, spanning the better part of one century, child sexual assault and risk of injury to a child frequently have been charged, hand in hand, as course of conduct crimes. In *Douglas C.*, I identify more than one dozen examples of such cases, beginning in 1952 and continuing through the present case, in which the state charged multiple instances of child sexual assault, or closely related crimes, in a single count. See id., 483–84 n.14 (*Mullins, J.*, concurring). Many of those cases, like the present one, involved a blend of generic testimony with testimony regarding specific incidents of abuse. No one ever suggested that there was a distinction to be drawn or that the two statutes should be treated differently with respect to course of conduct charging.

The legislature is presumed to be aware of this long-standing practice of charging child sexual assault, which has been memorialized in many appellate decisions and relied on in several of them. See, e.g., *State* v. *Snook*, supra, 210 Conn. 265; *State* v. *Silver*, supra, 139 Conn. 247 (*O'Sullivan, J.*, concurring). If the legislature was of the view that charging child sexual assault in this manner was an abuse of prosecutorial discretion or a misapplication of the statute, it could have made that clear during any of the many amendments to the statute over the years. In the absence of any clear manifestation of legislative intent, I fail to see what purpose will be served by suddenly prohibiting this long-standing charging practice.

For all of these reasons, I disagree with the conclusions reached by the majority, first, that there is any principled basis for permitting course of conduct charging under § 53a-21 (a) (2) but not § 53a-70 (a) (2), and, second, that the trial court committed reversible error by failing to give a specific unanimity instruction on the sexual assault count.[21]

[1] Although the majority is correct that whatever rules we adopt will potentially apply to most crimes; see footnote 20 of the majority opinion; the practical reality is that the scope of the continuing offense doctrine is most frequently and most hotly debated in cases that involve the sexual abuse of children. As a practical matter, regardless of which approach we adopt, course of conduct charging will not be appropriate for the vast majority of criminal prosecutions.

[2] The majority contends that, although the phrase "engages in sexual intercourse" may be ambiguous, insofar as one can *engage* in intercourse on a single occasion or on a regular basis, the statute is nevertheless unambiguous because intercourse itself happens on a onetime basis. See part I B of the majority opinion. I disagree. In my view, the text of the statute is facially ambiguous, in that "engages in sexual intercourse"—the actual conduct prohibited by the statute—could refer to one act or several. General Statutes § 53a-70 (a) (2). Thus, we may consider the legislative history pursuant to § 1-2z. I consider the statutory text in greater detail, as well as the legislative history, in part III of this opinion.

[3] See, e.g., *State* v. *Generazio*, 691 So. 2d 609, 611 (Fla. App. 1997) ("[w]ith the notable exception of New York, the courts of our sister states have recognized that child molestation is, by its very nature, a continuous course of criminality"); *Commonwealth* v. *King*, 387 Mass. 464, 467, 441 N.E.2d 248 (1982) (rejecting argument that rape of child could not be continuing offense); *State* v. *Cruz*, Docket No. A-1-CA-35877, 2019 WL 5095831, *1, *3 (N.M. App. September 30, 2019) (allowing course of conduct charging of criminal sexual penetration of minor), cert. denied, New Mexico Supreme Court, Docket No. S-1-SC-37991 (December 12, 2019); see also *State* v. *Saraceno*, 15 Conn. App. 222, 229–30, 545 A.2d 1116, cert. denied, 209 Conn. 823, 552 A.2d 431 (1988), and cert. denied, 209 Conn. 824, 552 A.2d 432 (1988).

[4] The defense consistently argued that the two young men, the state's primary witnesses, simply lacked credibility. Defense counsel argued that T was testifying for the state and conforming his testimony to that of the victim, pursuant to a cooperation agreement that would limit his own potential jail time. With respect to the victim, defense counsel focused on his unwillingness to review his prior statements to refresh his recollection and to clarify inconsistent testimony. Although defense counsel certainly pressed on the specifics of some of the alleged incidents as examples of both witnesses' lack of credibility, there was never any suggestion that one incident was especially unlikely or was subject to unique defenses, such as an alibi. Rather, the entire defense was predicated on the theory that T had a long history of abusing the victim and that the defendant had no motive to do so and had been wrongly implicated in the ongoing abuse. The prosecutor, as well as the trial court, concurred that the case came down to the credibility of these key witnesses.

[5] The court charged the jury in relevant part: "In order to convict the defendant on this count, you must be unanimous that at least one violation of this statute by one of the methods alleged occurred between the defendant and [the victim] during the time frame indicated."

[6] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[7] Dictionaries in print at the time a statute was enacted are considered "especially instructive" in ascertaining the common meaning of the statutory language. *State* v. *Menditto*, 315 Conn. 861, 866, 110 A.3d 410 (2015). Dictionaries in print in the late 1960s, when § 53a-70 originally was enacted, defined "engage," in its intransitive form, in a manner that suggests or encompasses a continuing course of conduct. See, e.g., Webster's Seventh New Collegiate Dictionary (1969) p. 275 ("to begin *and carry on* an enterprise" (emphasis added)).

[8] See Mass. Ann. Laws c. 265, § 23 (Law. Co-op. 1992) ("sexual intercourse or unnatural sexual intercourse, and [abuse of] a child under sixteen years of age").

[9] See N.M. Stat. Ann. § 30-9-11 (Michie 1984) ("the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse").

[10] In my concurrence in *Douglas C.*, I identified numerous examples in which the Second Circuit and other federal courts had held that various federal statutes were amenable to course of conduct charging, even though nothing in the statutory language expressly or even implicitly authorized such charging. See *State* v. *Douglas C.*, supra, 345 Conn. 487–90 and n.18 (*Mullins*, *J.*, concurring). In *United States* v. *Moloney*, 287 F.3d 236, 240 (2d Cir.), cert. denied, 537 U.S. 951, 123 S. Ct. 416, 154 L. Ed. 2d 297 (2002), the Second Circuit explained why violations of any criminal statute presumptively can be charged as a course of conduct, so long as the conduct reasonably can be characterized as part of a common scheme.

[11] The majority misstates my views by asserting that, "if explicit language is not used, such as the phrase course of conduct—then a criminal statute is silent regarding whether it criminalizes a single act, a continuous course of conduct, or both, and a prosecutor can choose which charging method to apply." (Internal quotation marks omitted.) Footnote 11 of the majority

opinion, quoting *State* v. *Douglas C.*, supra, 345 Conn. 451. That is not my view; nor is it accurate. Indeed, in part III A and B of this opinion, I fully review the relevant statutory language and its legislative history.

[12] E.g., 38 S. Proc., Pt. 10, 1995 Sess., p. 3444–45, remarks of Senator Thomas F. Upson; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1995 Sess., pp. 1554–57, 1613–17, remarks and written testimony of Governor Rowland; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1995 Sess., pp. 932–33, remarks of Representative Robert M. Ward; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1995 Sess., p. 682, remarks of Representative Ward; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 11, 1995 Sess., p. 3762 (statistics on child sexual abuse from Adam Walsh Center); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 11, 1995 Sess., p. 3760 (statement of Megan's Law regarding need to protect children from pedophiles).

[13] See, e.g., 32 H.R. Proc., Pt. 17, 1989 Sess., p. 5750, remarks of Representative Tulisano ("we had indicated [that] we were going to expand our study of this during the summer and further that we do run a problem of dealing with consensual relationships at age fourteen"); 32 H.R. Proc., Pt. 8, 1989 Sess., p. 2583, remarks of Representative Tulisano ("[c]urrently, our legislation does not . . . contemplate that kind of sexual . . . relationships"); see also 32 H.R. Proc., Pt. 39, 1989 Sess., p. 14179, remarks of Representative Tulisano ("[t]his would allow that it be sexual assault in the first degree . . . for anybody who has sexual relations with anybody under the age of [thirteen]"). As was the case with P.A. 95-142, the senate sponsor of P.A. 89-359—in this instance, Senator Steven Spellman—indicated that the primary purpose of the bill was to protect children from sexual predation. See 32 S. Proc., Pt. 12, 1989 Sess., p. 4043.

[14] Indeed, the legislature has made it clear that the stated public policy of this state is to protect children from abuse and neglect. See General Statutes § 17a-101 (a), as amended by Public Acts 2022, No. 22-87, § 4 ("[t]he public policy of this state is . . . [t]o protect children whose health and welfare may be adversely affected through injury and neglect").

[15] The majority acknowledges that the language of the two statutes is not meaningfully different with respect to course of conduct charging and that "our interpretation of the language in § 53-21 (a) (2) is premised in no small part on our prior interpretation of this statute . . . ." Footnote 12 of the majority opinion. As I explain herein, that prior interpretation was not based on the court's analyzing the statute's "situations" language to conclude that continuing course charging was permissible. Rather, we simply agreed with the prosecutor's decision, as a practical matter, to charge a continuing course of conduct under the circumstances.

[16] Specifically, the majority contends that, "under our prior case law interpreting this statute, risk of injury to a child may be charged under a continuing course of conduct theory"; part I A of the majority opinion; and there is no indication that the legislature intended to reject this interpretation when it amended the statute in 1995; see footnote 12 of the majority opinion; whereas "this court has not recognized a common-law exception for a continuing course of sexual assault, even in cases involving children." Part I B of the majority opinion.

[17] *Frazier*, on which the majority relies most heavily, is also readily distinguishable. *Frazier* involved three alleged rapes of an adult woman committed in close succession on a Sunday morning. See *State* v. *Frazier*, supra, 185 Conn. 213–14. The state charged the defendant with seven separate violations of two now defunct statutes, one prohibiting rape in the first degree and one prohibiting deviate sexual intercourse in the first degree—not the child sexual assault statute at issue in the present case. See id., 212 and nn.1 and 2. This court merely held that the state was not obliged to charge the multiple acts of forced intercourse, "committed . . . in a short period of time," as one continuous act. (Internal quotation marks omitted.) Id., 228.

[18] In almost all of these cases, the multiple convictions were for different acts perpetrated on one occasion, so that the court was not confronted with the continuous course of conduct issue raised in this appeal but, rather, the question of whether the legislature intended that different infractions committed as part of one ongoing criminal episode can be treated as distinct crimes.

[19] I disagree with the majority's contention that *Saraceno* is not relevant authority because it relies on the *Gipson* test, which the majority repudiates. See part I B and footnote 16 of the majority opinion. At no point does *Saraceno* cite to, much less rely on, *Gipson* or its conceptual distinctness test. Rather, *Saraceno* relies entirely on the same federal cases that I would

follow, such as *United States* v. *Margiotta*, supra, 646 F.2d 729, and *United States* v. *Shorter*, 608 F. Supp. 871 (D.D.C. 1985), aff'd, 809 F.2d 54 (D.C. Cir.), cert. denied, 484 U.S. 817, 108 S. Ct. 71, 98 L. Ed. 2d 35 (1987). See *State* v. *Saraceno*, supra, 15 Conn. App. 229–30.

[20] Accordingly, I do not agree with the majority's contention that the Appellate Court in *Saraceno* concluded that any error was harmless, and not that there was no error. See part I B of the majority opinion. Likewise, in several subsequent cases, the Appellate Court proceeded on the assumption that the question of prejudice went to the issue of whether duplicitous charging of sexual assault created a constitutional violation, and not to whether any error was harmless, and, accordingly, held that the claim at issue foundered on the third prong, and not the fourth, of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). See, e.g., *State* v. *Marcelino S.*, 118 Conn. App. 589, 594, 984 A.2d 1148 (2009), cert. denied, 295 Conn. 904, 988 A.2d 879 (2010); *State* v. *William B.*, supra, 76 Conn. App. 759–60.

[21] In several places, the majority highlights the fact that I have made arguments in this opinion regarding the scope of the course of conduct exception that the state itself does not make in its brief. See footnotes 12 and 17 of the majority opinion. That observation fails to tell the whole story. As the majority readily acknowledges, until today, this court had not formally recognized any prohibition against charging multiple instances of a single crime in one count of an information. We assessed duplicity challenges only for unanimity as to elements. In its brief, the state simply argues that we should continue to apply that precedent. The defendant invites this court to adopt a new rule requiring unanimity as to instances, but his proposed analytical framework for applying that rule does not include any exception for continuing offenses or course of conduct charging. In fact, the majority opinion is the first time the course of conduct exception is set out and explained. Thus, it is not nearly as telling to me as it is to the majority that the state did not make an argument in response to an exception that only was explicated for the first time in *Douglas C.*