******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

D'AURIA, J., with whom ECKER, J., joins, dissenting. Today, in *Smith* v. *Supple*, 346 Conn. 928,      A.3d (2023), one of two companion cases to the present case that we also decide today, a majority of this court holds that an appeal from the denial of a special motion to dismiss filed pursuant General Statutes § 52-196a, our anti-SLAPP statute, constitutes an appealable final judgment under the second prong of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), if the special motion to dismiss is premised on a "colorable claim" that the underlying cause of action is based on the defendants' exercise of their rights to free speech, to free association, or freedom to petition the government. *Smith* v. *Supple*, supra, 930; see id., 960. I dissented in *Smith* because I do not interpret § 52-196a to grant either a right to an immediate appeal, a right to immunity from suit, or any analogous right not to proceed to trial before an appellate court has reviewed the trial court's gatekeeping determination. In that dissent, I detailed not just my disagreement with the majority's statutory construction analysis—especially its interpretation of the nature of the right § 52-196a creates—but also my belief that an appeal of that gatekeeping ruling, on a record assembled in an expedited fashion under the statute, does not permit the level of judicial scrutiny often required to adjudicate weighty constitutional issues at the appellate level, especially such intensely fact based issues as whether statements were made in a public forum or on a matter of public concern. See id., 966, 971–72, 1001–1002 (*D'Auria, J.*, dissenting). Therefore, in my view, the denial of these motions should not constitute appealable final judgments.[1] See id., 966, 1001–1002 (*D'Auria, J.*, dissenting).

My disagreement with the majority in *Smith* was also premised, in no small part, on my belief that the colorable claim standard the majority established in that case is such a low bar as to be essentially no bar at all, permitting appeals from the denial of virtually every special motion to dismiss. Any illusions that the colorable claim standard will provide the Appellate Court— where, in the first instance, these interlocutory appeals will almost always be filed and any final judgment challenges resolved—with a tool to bat aside and short-circuit appeals that have little hope of prevailing are, in my view, dashed by the majority's determination in the present case that the Appellate Court improperly dismissed the defendants' appeal and that, therefore, even this appeal will have to be briefed, argued, and decided before the parties return to the trial court.

The plaintiff, J. Xavier Pryor, brought this action against the defendants, Timothy Brignole and Brignole Bush & Lewis, LLC, claiming that an anonymous letter

Brignole sent to various news outlets about the plaintiff breached the nondisparagement provision of their settlement agreement and caused the plaintiff to sustain (1) harm to his reputation and interests, (2) economic damages, and (3) the loss of the benefit of the settlement agreement. Both defendants filed special motions to dismiss the action as a SLAPP suit pursuant to § 52-196a, contending that the plaintiff's breach of contract claims were based on Brignole's "right of free speech in connection with a matter of public concern . . . ." The trial court denied the defendants' motions, concluding that, because Brignole had denied sending the letters at issue, the defendants had failed to satisfy their "initial burden" under § 52-196a (e) (3) of showing, by a preponderance of the evidence, that they were being sued as a result of Brignole's exercise of his free speech rights. In other words, the trial court determined that the defendants, having denied that Brignole sent the letters, could not avail themselves of the statute's protections because they could not demonstrate that they were being sued for the exercise of their first amendment rights insofar as there was no such exercise according to them. They therefore had not invoked the special motion procedure afforded under § 52-196a for its intended purpose: to protect those claiming they had been sued for exercising their first amendment rights.

The defendants filed separate appeals with the Appellate Court, and, without opinion, the Appellate Court dismissed the appeals for lack of a final judgment. As I indicated previously, I would hold that the Appellate Court properly dismissed the appeals because I do not believe that the legislature intended to provide either a statutory right to appeal the ruling or any kind of right that would satisfy the second prong of *Curcio*.[2]

The majority, however, holds that the defendants have asserted "a colorable claim that Brignole's conduct, as alleged in the plaintiff's complaint, is based on the exercise of his 'right of free speech,' as that term has been defined by our legislature in § 52-196a (a) (2)." The majority's holding means that the defendants can have their cake and eat it, too. That is, Brignole can deny that he disparaged the plaintiff but can still stop his lawsuit in its tracks and take advantage of a procedure by which the trial court must give priority to the defendants' motions. See General Statutes § 52-196a (e) (1) ("[t]he court shall conduct an expedited hearing on a special motion to dismiss"). And, having been unsuccessful, the defendants can perpetuate this special treatment by taking a rarely afforded interlocutory appeal of the denials of their special motions to dismiss, preventing the plaintiff from pursuing his case for as long as the appellate process takes. The plaintiff must hurry up and wait for someone who actually denies engaging in constitutionally protected speech at all.

The majority's only support for this proposition is

that "courts in [two] other jurisdictions presented with similarly worded anti-SLAPP statutes have also considered the merits of special motions to dismiss, even in cases in which the defendant has denied making all or some of the underlying statements alleged." The majority goes on to state: "Because the issue before us is limited to whether the defendants in the present case have asserted a colorable claim to the protections afforded by our state's anti-SLAPP statute, as required to obtain an immediate review of the trial court's denial of their special motions to dismiss under the second prong of *Curcio*, we need not determine whether any of the foregoing persuasive authority is either factually distinguishable or legally correct." (Emphasis omitted.)

The difficulty I have with the majority's approach—which provides a procedural advantage to defendants for which there is no analogue for plaintiffs—is similar to the difficulty I had with the majority's interpretation of a different part of the statute in *Smith*. That is, in its zeal to examine precedents of other state courts and follow suit, the majority does not conduct any kind of analysis of Connecticut's anti-SLAPP statute, under Connecticut's own legal principles (including, specifically, General Statutes § 1-2z), to determine if § 52-196a even arguably supports the majority's contention that a defendant may deny making the alleged statements—a defense that does not involve any constitutional rights—while taking advantage of the benefits afforded under § 52-196a. Irrespective of what courts in other states have held, once we have properly construed § 52-196a, we might conclude that its protections do not even colorably extend to a defendant who denies making a statement at all.

Under a proper § 1-2z analysis, for the defendants to succeed on their special motions to dismiss under § 52-196a, they must have raised in their motions a defense that their actions constituted protected speech. Specifically, § 52-196a (b) provides in relevant part that, "[i]n any civil action in which a party files a complaint . . . against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss . . . ." Also, subsection (e) (3) of § 52-196a directs that the court "shall" grant the motion if the moving party "makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint . . . is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association . . . ."

At least arguably, the language of § 52-196a (b) indicates that a defendant has a right to file a special motion to dismiss only when the underlying action is based on

the defendant's right of free speech, right to petition the government, or right of association. Similarly, the plain language of subsection (e) (3) suggests that a defendant must raise and establish by a preponderance of the evidence that the plaintiff's action violates his first amendment rights. Although the defendants in the present case did raise a first amendment defense in their special motions to dismiss, they also raised as their main defense that Brignole did not make the alleged statements. Although it is standard and acceptable procedure for parties to plead and argue in the alternative, § 52-196a creates a special proceeding that the statute makes very clear is reserved only for those invoking constitutional rights that are imperiled. It is thus at least arguable under the statutory language that § 52-196a does not apply to defendants who contest making the statements at issue. If true, then a plaintiff's own constitutional right—of access to courts—would be unnecessarily compromised in favor of those whom the statute does not protect. I see no impediment to deciding that issue in this certified appeal, even as a matter of whether the defendants have a colorable claim.

Accordingly, for the reasons detailed in my dissent in *Smith*, and for the reasons discussed in this opinion, I respectfully dissent.[3]

[1] Rather, I interpret § 52-196a as granting a new procedural right, entitling the defendants to raise as early as possible in the litigation their preexisting right to immunity from liability when the underlying defense is premised on their exercise of a first amendment right or a state constitutional analogue. The defendants had the right to file a special motion to dismiss early in the litigation process, with discovery and its associated costs and burdens stayed until the trial court resolved the special motion. See *Smith* v. *Supple*, supra, 346 Conn. 970–71, 976, 987–88 (*D'Auria*, *J.*, dissenting).

[2] As I indicated in my dissent in *Smith*, under my interpretation of the statutory right at issue, the defendants have received the intended benefits of § 52-196a. See *Smith* v. *Supple*, supra, 346 Conn. 966 (*D'Auria*, *J.*, dissenting). The trial court, acting in its gatekeeping function, considered the merits of the underlying lawsuit, determining that the defendants had failed to " '[make] an initial showing, by a preponderance of the evidence,' " establishing that the plaintiff brought the underlying lawsuit abusively or frivolously to chill the defendants' right to free speech. More specifically, the trial court ruled that nothing in the record demonstrated that Brignole had actually exercised his right to free speech. Thus, the defendants, "early in the process," had the opportunity to "try to dismiss a frivolous or abusive claim that has no merit" and did not have to incur significant costs of litigation until they received a determination on their motion. (Internal quotation marks omitted. ) *Lafferty* v. *Jones*, 336 Conn. 332, 382 n.36, 246 A.3d 429 (2020), cert. denied,    U.S.    , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021).

[3] I also disagree with the rescript in this case. I would not saddle the Appellate Court with a remand and ask it to decide, even in the first instance, the several novel issues that the majority's approach to our statute creates in a case such as this. For one reason, we are going to have to resolve these questions anyhow at some point. Moreover, if it turns out that the trial court properly denied the special motions to dismiss, the plaintiff's action has already been delayed almost three years.