******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# ALAN KAUFMAN ET AL. *v.*
# KATHLEEN E. SYNNOTT
# (AC 48141)

Cradle, C. J., and Wilson and Norcott, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment granting the defendant's special motion to dismiss pursuant to the anti-SLAPP statute (§ 52-196a) and her motion for attorney's fees and costs pursuant to § 52-196a (f) (1). The plaintiff claimed, inter alia, that the court lacked subject matter jurisdiction to grant the special motion to dismiss. *Held*:

The trial court did not lack subject matter jurisdiction to adjudicate the defendant's special motion to dismiss, as the plaintiff's argument was properly characterized as a challenge to the manner in which the court exercised its authority to act in regard to the anti-SLAPP proceedings brought by the defendant, rather than its power to hear and determine such matters.

This court declined to consider the merits of the plaintiff's assertions regarding the constitutionality of the anti-SLAPP statute, as the plaintiff failed to raise such claims in a timely fashion.

The trial court properly granted the defendant's motion for attorney's fees and costs and rejected the plaintiff's interpretation of § 52-196a (f) (1), namely, that, because the defendant's insurance company, C Co., assumed the financial responsibility for payment of the defendant's attorney's fees and costs, the defendant did not "incur" attorney's fees and costs as required by the statute, as this interpretation was not supported by the statute's plain language or its overarching purpose, the defendant having unquestionably incurred costs in the course of responding to and defending against the plaintiff's SLAPP lawsuit, and C Co., which ultimately assumed financial responsibility for payment, would not have had to pay attorney's fees and costs had they not been incurred in the first instance by the defendant, and the goals of protecting defendants from the time and costs associated with the defense from meritless lawsuits were not benefited or advanced by the plaintiff's interpretation of the statute, which would delay resolution and increase the costs of such litigation.

The trial court did not abuse its discretion in determining the amount of the attorney's fees and costs awarded to the defendant and did not misapply the factors set forth in *Johnson* v. *Georgia Highway Express, Inc.* (488 F.2d 714), for guiding such a determination, as the court performed a comprehensive analysis of the attorney's fees and costs requested by the defendant.

Argued February 17—officially released June 30, 2026

*Procedural History*

Acton to recover damages for, inter alia, defamation, and for other relief, brought to the Superior Court in the

judicial district of Stamford-Norwalk, where Sallyann Pelletier and Natalie Jarnstedt were cited in as party defendants; thereafter, the court, *Genuario, J.*, granted the special motion to dismiss filed by the defendant Natalie Jarnstedt; subsequently, the court, *Hon. Edward T. Krumeich II*, judge trial referee, granted the defendant Natalie Jarnstedt's motion for an award of attorney's fees and costs and denied the named plaintiff's motion for summary judgment, and the named plaintiff appealed to this court. *Affirmed*.

*Alan H. Kaufman*, self-represented, the appellant (named plaintiff).

*Adam M. Teich*, for the appellee (defendant Natalie Jarnstedt).

*Opinion*

NORCOTT, J. In 2019, the self-represented plaintiff, Alan Kaufman,[1] commenced an action against the defendant Natalie Jarnstedt[2] alleging defamation and civil conspiracy. The defendant subsequently filed a special motion to dismiss pursuant to General Statutes § 52-196a (b),[3] which the trial court granted. The plaintiffs thereafter filed two appeals, both of which were

[1] This action was commenced by the named plaintiff and his wife, Laura Kaufman, both acting as self-represented parties. Only the named plaintiff has pursued this appeal and filed a brief with this court. Additionally, we note that the named plaintiff has represented that he is an attorney. In this appeal, we refer to Alan Kaufman as the plaintiff. We refer to Alan Kaufman and Laura Kaufman, collectively, as the plaintiffs.

[2] In their initial complaint, the plaintiffs named Kathleen E. Synnott as the defendant. In their first amended complaint, the plaintiffs added claims against Jarnstedt and Sallyann Pelletier. On October 15, 2019, the trial court granted the plaintiffs' motion to cite in Jarnstedt and Pelletier as parties. In this appeal, we refer to Jarnstedt as the defendant and to Synnott, Jarnstedt and Pelletier, collectively, as the defendants.

[3] General Statutes § 52-196a (b) provides: "In any civil action in which a party files a complaint, counterclaim or cross claim against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss the complaint, counterclaim or cross claim."

dismissed by this court. During this time period, the defendant filed several motions for attorney's fees and costs pursuant to §52-196a (f) (1). On October 3, 2024, the court granted the defendant's motion for attorney's fees in the amount of $91,698, and litigation costs in the amount of $2807.27 for a total of $94,505.27. The plaintiff then appealed from this award.

On appeal, the plaintiff challenges both the granting of the special motion to dismiss and the award of attorney's fees and costs. With respect to the former, the plaintiff claims that (1) the trial court lacked subject matter jurisdiction to grant the special motion to dismiss and (2) the anti-SLAPP statute,[4] §52-196a, is unconstitutional for various reasons. As to the latter, the plaintiff claims that the court improperly (1) concluded that the defendant incurred attorney's fees and costs, because they ultimately are to be paid by her insurance company, and (2) applied the twelve factors set forth in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.

[4]"SLAPP is an acronym for strategic lawsuit against public participation, the distinctive elements of [which] are (1) a civil complaint (2) filed against a nongovernment individual (3) because of their communications to government bodies (4) that involves a substantive issue of some public concern. . . . The purpose of a SLAPP suit is to punish and intimidate citizens who petition state agencies and have the ultimate effect of chilling any such action. . . . *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,    U.S.    , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021)." (Internal quotation marks omitted.) *Sicignano* v. *Pearce*, 228 Conn. App. 664, 665 n.1, 325 A.3d 1127 (2024), cert. denied, 351 Conn. 908, 330 A.3d 881 (2025).

Section 52-196a, our anti-SLAPP statute, "constitutes a special statutory benefit . . . that provides a moving party with the opportunity to have [a] lawsuit dismissed early in the proceeding and stays all discovery, pending the trial court's resolution of the special motion to dismiss. . . . As this court has observed, [a] special motion to dismiss filed pursuant to §52-196a . . . is not a traditional motion to dismiss based on a jurisdictional ground. It is, instead, a truncated evidentiary procedure enacted by our legislature in order to achieve a legitimate policy objective, namely, to provide for a prompt remedy." (Citations omitted; internal quotation marks omitted.) *Mulvihill* v. *Spinnato*, 228 Conn. App. 781, 782, 326 A.3d 251, cert. denied, 350 Conn. 926, 326 A.3d 248 (2024). Thus, as we have recognized, §52-196a provides statutory protection against SLAAP lawsuits. *King* v. *Hubbard*, 217 Conn. App. 191, 194 n.1, 288 A.3d 218 (2023).

1974) (*Johnson* factors), in determining the amount of the attorney's fees and costs awarded to the defendant. We conclude that the trial court had subject matter jurisdiction to consider the defendant's special motion to dismiss, and the plaintiff's constitutional challenges to the court's granting of the special motion to dismiss are untimely and, therefore, not properly before this court at this juncture. We further conclude that the court properly determined that the defendant was entitled to attorney's fees and costs pursuant to § 52-196a (f) (1) and did not abuse its discretion in determining the amount of such award. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history inform our resolution of this appeal. The plaintiffs commenced their action on November 5, 2017, against only the named defendant, Kathleen E. Synnott, alleging defamation and harassment. In September, 2019, the plaintiffs filed an amended complaint and a motion to cite in the defendant and Sallyann Pelletier. The court granted the motion to cite in as parties the additional defendants on October 15, 2019, and the defendant received service nine days later. "One count alleging defamation and civil conspiracy was directed at each of the defendants, and a fourth count entitled punitive damages was directed against all three defendants." In their operative complaint, the plaintiffs alleged that they were defamed and slandered by the defendants via complaints to the police and other local and state officials, and by postings on websites and online newspapers. More specifically, the plaintiffs claimed that they owned "two 'field type' English Springer Spaniel dogs," a specialized canine species bred for hunting. The plaintiffs alleged that the defendants generally reported that they had mistreated the dogs in that these animals received little human attention, faced exposure to the elements, and suffered from deprivation of water and sufficient food.[5]

[5] As to the defendant specifically, the plaintiffs alleged the following in count three of the operative complaint: "Jarnstedt, who lives more than twelve miles from [the plaintiffs], complained to the Darien animal

On December 11, 2019, the defendant filed a special motion to dismiss pursuant to §52-196a. The defendant sought dismissal of the amended complaint directed against her on the grounds that the allegations set forth in the operative pleading centered on her right to petition the government on a matter of public concern and the plaintiffs could not establish probable cause on the merits of their claims. The court permitted limited discovery.[6] Consistent with the statutory language, the court scheduled an expedited hearing on the defendant's special motion to dismiss.[7] The COVID-19 pandemic delayed both the discovery and the hearing on the defendant's motion until May 10, 2021.

Following that hearing, the court, *Genuario, J.*, issued a memorandum of decision granting the defendant's special motion to dismiss. The court began its analysis

control officer that the [plaintiffs'] dogs are not provided with [proper shelter] in extreme weather conditions (hot or cold)—often without water or frozen water in the winter. . . . Jarnstedt said that she observed these conditions when she took a walk to the [plaintiffs'] house with friends who were extremely upset about [the plaintiffs' dogs]. She asked . . . the animal control officer to launch a thorough investigation." (Emphasis omitted; internal quotation marks omitted.) The plaintiffs further claimed that the defendant's intention was to harm the reputation of the plaintiffs, to provoke the filing of criminal charges by town officials, and to have the dogs taken away from the plaintiffs. Additionally, the plaintiffs asserted that the defendant either posted or participated and facilitated in the posting of false statements to a website and collaborated and conspired with the other defendants to do so. The plaintiffs sought from the defendant $2,750,000 in special and presumptive exemplary damages and for emotional distress.

[6]General Statutes §52-196a (d) provides: "The court shall stay all discovery upon the filing of a special motion to dismiss. The stay of discovery shall remain in effect until the court grants or denies the special motion to dismiss and any interlocutory appeal thereof. Notwithstanding the entry of an order to stay discovery, the court, upon motion of a party and a showing of good cause, or upon its own motion, may order specified and limited discovery relevant to the special motion to dismiss."

In this matter, the court granted the plaintiffs' motion for limited discovery and permitted the plaintiffs to take the deposition of Synnott and the defendant with each limited to no more than three hours. Additionally, the court ordered the defendant to comply with certain limited requests for production prior to her deposition.

[7]See General Statutes §52-196a (e) (1).

by setting forth the applicable two part test: "The first part requires the court to determine whether the moving party (in this case [the defendant]) has made an initial showing by a preponderance of the evidence that the complaint is based on the moving party's exercise of free speech, right to petition the government or right of association. Only if the moving party has made that initial showing does the court consider the second prong of analysis which is whether or not the opposing party (in this case the plaintiffs) has demonstrated that there is probable cause that they will prevail on the merits of the complaint." See General Statutes § 52-196a (e) (3);[8] see also *Mulvihill* v. *Spinnato*, 228 Conn. App. 781, 787–88, 326 A.3d 251, cert. denied, 350 Conn. 926, 326 A.3d 248 (2024).

With respect to the first prong, the court noted that the defendant's affidavit[9] stated that she wrote a letter to the Darien Police Department and requested that the "Animal Control Unit" or "dog warden" investigate the welfare of the plaintiffs' dogs.[10] The defendant wrote this letter at the behest of Synnott. The court determined that, although "the deposition of [the defendant] did

---

[8] General Statutes § 52-196a (e) (3) provides: "The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint, counterclaim or cross claim is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, unless the party that brought the complaint, counterclaim or cross claim sets forth with particularity the circumstances giving rise to the complaint, counterclaim or cross claim and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint, counterclaim or cross claim."

[9] General Statutes § 52-196a (e) (2) provides: "When ruling on a special motion to dismiss, the court shall consider pleadings and supporting and opposing affidavits of the parties attesting to the facts upon which liability or a defense, as the case may be, is based."

The parties filed respective affidavits in support of and in opposition to the defendant's special motion to dismiss.

[10] This letter, sent as an email and addressed to Darien Animal Control, stated as follows: "My husband and I visited friends in Darien who are extremely upset about two English Setters in their neighborhood; they

reveal that some of the statements in her letter . . . were knowingly not truthful, there is no evidence that she participated in any other conduct other than writing [this] letter . . . ." The court concluded, therefore, that this writing, despite containing certain falsehoods, constituted an exercise of the defendant's right to petition the government[11] and involved a matter of public concern.[12] Accordingly, the court found that the defendant met the first prong necessary to prevail on her special motion to dismiss.

The court then turned to the second prong, which required the plaintiffs to demonstrate probable cause that they would prevail on the merits of their amended complaint. The court, after taking into account all valid

were so concerned, that we took a walk to 38 Delafield Island Road where the dogs are penned, seemingly the entire time.

"Don't state statutes require dogs to be housed properly in extreme weather? These dogs are NOT provided with such, in extreme weather conditions (hot nor cold)—often without water or frozen water in the winter—the pen (although fairly large) is NOT cleaned regularly, which means that the dogs are also living in extremely unsanitary conditions!

"My husband and I lived with two English Setters years ago (we have smaller dogs now); we found them to be highly intelligent animals requiring rigorous/regular exercise, and proper stimulation—they do NOT thrive well without it.

"As we understood it, not much was done after a complaint was filed.

"[May] we suggest that Darien Animal Control launch a thorough investigation—this is not a proper way of treating animals, it borders on animal abuse/cruelty!

"Hoping to hear from you . . . ."

[11]General Statutes § 52-196a (a) provides in relevant part: "'(3) Right to petition the government' means (A) communication in connection with an issue under consideration or review by a legislative, executive, administrative, judicial or other governmental body, (B) communication that is reasonably likely to encourage consideration or review of a matter of public concern by a legislative, executive, administrative, judicial or other governmental body, or (C) communication that is reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, administrative, judicial or other governmental body . . . ."

[12]General Statutes § 52-196a (a) provides in relevant part: "'(1) Matter of public concern' means an issue related to (A) health or safety, (B) environmental, economic or community well-being, (C) the government, zoning and other regulatory matters, (D) a public official or public figure, or (E) an audiovisual work . . . ."

defenses available to the defendant, determined that, contrary to the statement in her letter, the defendant had never been to the plaintiffs' property where the dogs were kept and had never seen the dogs or the conditions in which they lived. Instead, the defendant relied exclusively on Synnott's statements regarding these matters. The court further determined that the defendant indicated that she had no reason to believe that Synnott's communications regarding the plaintiffs' dogs and their living conditions were untrue. Ultimately, the court determined that, when considering the import of her entire letter, the defendant's statements were made with reckless disregard for the truth and, thus, probable cause existed that she would not prevail on her defense of qualified immunity applicable to statements made to the police concerning alleged criminal activity.[13]

The court then considered the defendant's potential statute of limitations defenses. It determined that the two year statute of limitations set forth in General Statutes § 52-597[14] would bar "any direct defamation claims" made by the plaintiffs against the defendant. The plaintiffs argued, however, that the defendant conspired with Synnott, Pelletier, and other unnamed parties to defame the plaintiffs, and that tort was subject to the

---

[13]"[S]tatements made to the police in connection with a criminal investigation . . . are entitled to protection by a qualified privilege. . . . Therefore, for the plaintiffs to prevail on their defamation claim, they must prove that the defendant made her statement with malice. *Hassett* v. *Carroll*, 85 Conn. 23, 35–36, 81 A. 1013 (1911) ('[o]ne publishing defamatory words under a qualified or conditional privilege is only liable upon proof of express malice'). '[T]he malice required to overcome a qualified privilege in defamation cases is malice in fact or actual malice.' . . . 'Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false." (Citations omitted.) *Mara* v. *Otto,* 127 Conn. App. 404, 409, 13 A.3d 1134 (2011).

[14]General Statutes § 52-597 provides: "No action of libel or slander shall be brought but within two years from the date of the act complained of."

In this matter, the defendant's letter was forwarded by email to the Darien Animal Control officer on August 31, 2017. The plaintiffs did not make an effort to cite in the defendant as a party until September 30, 2019, beyond the two year statute of limitations.

three year statute of limitation set forth in General Statutes § 52-577.[15] The court reasoned, however, that the defendant's involvement did not go beyond her August 31, 2017 letter to Darien Animal Control and, thus, the plaintiffs failed to demonstrate that she participated in a conspiracy to defame them.[16] Ultimately, the court concluded that the plaintiffs failed to sustain their statutory burden, and, accordingly, granted the defendant's special motion to dismiss.

On November 10, 2021, the plaintiffs appealed from the court's granting of the defendant's special motion to dismiss. On December 21, 2021, this court dismissed their appeal for failing to file various documents with the Office of the Appellate Clerk. This court also denied a motion for reconsideration of this dismissal on February 2, 2022. On May 24, 2022, our Supreme Court denied the plaintiffs' petition for certification to appeal. See *Kaufman* v. *Synnott*, 343 Conn. 923, 275 A.3d 212 (2022).

The plaintiffs filed a second appeal with this court on May 31, 2022, in which they challenged the denial of a motion to amend the complaint and the denial of a motion to reargue. On September 22, 2023, this court dismissed the second appeal as a result of the plaintiffs' failure to timely file their brief and appendix.

---

[15]General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[16]Specifically, the court reasoned: "In order to establish a civil conspiracy to defame, the plaintiffs must provide evidence that meets the standard of probable cause that [the defendant] combined with one or more persons to do a criminal or an unlawful act or a lawful act by criminal or unlawful means. The [plaintiffs have] failed to prove by the applicable standard that [the defendant] combined to do a criminal or unlawful act. [The defendant] wrote a letter to the Darien Animal Control officer making statements she believed to be true, though admittedly without any personal knowledge of their truth, concerning the treatment of certain dogs and seeking an investigation. Such activity is neither criminal nor unlawful. . . . There is no evidence before this court that would support a finding even to the level of probable cause that she participated in any of the Internet or website postings of which the plaintiffs complain." (Emphasis omitted.)

Following the granting of the special motion to dismiss, the defendant, on October 14, 2021, moved for an award of attorney's fees and litigation costs. On January 20, 2022, following the dismissal of the appeal filed by the plaintiffs, the defendant filed a supplemental motion for attorney's fees and costs. Following the dismissal of the plaintiffs' second appeal, on October 12, 2023, the defendant again filed a motion seeking attorney's fees and costs. This motion, filed pursuant to §52-196a (f) (1) and Practice Book §11-21, requested $91,698 in attorney's fees and $2807.27 in costs for a total amount of $94,505.27.

In response, on February 21, 2024, the plaintiffs moved for summary judgment as to the defendant's claim for attorney's fees and costs. Therein, the plaintiffs argued that the defendant's insurance company, Chubb Insurance, was the entity that incurred legal fees in this matter, but the defendant was the party that moved for the payment of such fees. Attached to the plaintiffs' motion was a December 5, 2019 engagement letter from the defendant's counsel to the defendant indicating that said counsel had been retained by Chubb Insurance. The letter also stated: "I write to let you know that our firm will look to your insurance carrier for payment of all of our attorneys' fees and expenses in accordance with the applicable insurance policy, and we will not look to you for payment of any such fees." Given these facts, the plaintiffs asserted that the conditions of §52-196a (f) (1) were not satisfied and therefore the court should not award attorney's fees and costs. The defendant objected to the plaintiffs' motion for summary judgment on February 22, 2024.

The court held a hearing on July 15, 2024, to address the defendant's motions for attorney's fees and litigation costs and the plaintiffs' motion for summary judgment. Following that proceeding, the court, *Hon. Edward T. Krumeich II*, judge trial referee, issued a memorandum of decision on October 3, 2024. It rejected the plaintiffs' argument that §52-196a (f) (1) requires the moving party

to have actually paid or been personally liable for the payment of the fees, costs, and expenses incurred in the lawsuit under this statutory framework. Specifically, it reasoned that the plaintiffs' interpretation, which was contrary to the plain language of the statute, "would blast quite a hole in the protections afforded [to] those who were unfairly drawn into SLAPP suits for the exercise of protected rights." Furthermore, the court explained that there was "no indication that the legislature intended to shift the ultimate burden of incurred costs and fees from the losing party to innocent third parties who actually paid or are liable for payment of costs and fees included in defense of the SLAAP suit. [Finally] the word 'incurred' in §52-196a (f)(1) refers to the work done, not the costs and fees to be awarded."

Next, the court, after applying the *Johnson* factors, concluded that the amount of the requested fees and costs was reasonable, and that the downward adjustment requested by the plaintiffs was not applicable under these facts and circumstances. Accordingly, the court denied the plaintiffs' motion for summary judgment and awarded the defendant costs and fees in the amount of $94,505.27. In a footnote, the court observed that the plaintiffs raised several constitutional challenges to §52-196a in a posthearing brief. The court concluded that, under these circumstances, the plaintiffs waived the right to challenge the constitutionality of the relevant statutory scheme at this point of the litigation. This appeal followed. Additional facts will be set forth as needed.

I

The plaintiff first challenges the granting of the special motion to dismiss filed by the defendant. Specifically, the plaintiff argues that, as a precondition to the application of the provisions of §52-196a, there must be a valid exercise of a first amendment right.[17] He further asserts that given the court's determination that portions of the

[17]In using the term "first amendment right" we refer to "the exercise of . . . constitutional rights to free speech, to free association, or to

defendant's letter were false, no first amendment right had been exercised and, therefore, the court should not have granted the special motion to dismiss. Additionally, for the first time at oral argument before this court, the plaintiff claimed that due to the false statement in the defendant's letter and the resulting lack of valid first amendment concerns, the court lacked subject matter jurisdiction to proceed under § 52-196a. The plaintiff also contends that the fee shifting provisions in the statute are unconstitutional on an as applied basis by improperly creating a hierarchy of first amendment rights between the parties and by failing to distinguish between cases brought in good faith and those brought in bad faith. We disagree that the subject matter jurisdiction of the trial court is implicated under these facts and circumstances. Furthermore, we conclude that, as a result of the plaintiff's untimely constitutional challenges to § 52-196a, he has waived such contentions, and we decline to consider them.

## A

We first consider the plaintiff's claim, raised for the first time at oral argument, that the trial court lacked subject matter jurisdiction to grant the special motion to dismiss.[18] Specifically, the plaintiff argues that, in the August 27, 2021 memorandum of decision, Judge Genuario determined that some of the statements contained in the defendant's letter were false, and that false statements are not protected under the first amendment. The plaintiff further contends that, as a result of this determination, the trial court lacked subject matter jurisdiction to proceed under § 52-196a, including awarding

petition the government." *Smith* v. *Supple*, 346 Conn. 928, 970, 293 A.3d 851 (2023) (*D'Auria, J.*, dissenting).

[18] In his appellate brief, the plaintiff argues that false statements are not entitled to constitutional protection and, therefore, the predicate for awarding attorney's fees under our anti-SLAAP statute was absent. The plaintiff did not, however, assert that such a deficiency implicated the subject matter jurisdiction of the trial court until oral argument before this court.

attorney's fees and costs to the defendant. We are not persuaded.

We first consider the manner in which the plaintiff has raised his claim that the trial court lacked subject matter jurisdiction. We iterate that the plaintiff did not challenge the subject matter jurisdiction of the trial court until oral argument before this court. As a general matter, we do not consider arguments raised for the first time at oral argument. See *L. K.* v. *K. K.*, 226 Conn. App. 279, 287, 318 A.3d 243 (2024). We recognize, however, that a claim that the trial court lacks subject matter jurisdiction may be raised at *any time* and is subject to plenary review by this court. *Starboard Resources, Inc.* v. *Henry*, 196 Conn. App. 80, 87–88, 228 A.3d 1042, cert. denied, 335 Conn. 919, 231 A.3d 1170 (2020); see also *Machado* v. *Taylor*, 326 Conn. 396, 404, 163 A.3d 558 (2017). Indeed, "[o]nce the question of lack of jurisdiction is raised, it must be disposed of no matter in what form it is presented. . . . The court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *L. K.* v. *K. K.*, supra, 287–88. For this reason, we will consider the plaintiff's claim that the trial court lacked subject matter jurisdiction to proceed under § 52a-196a despite having been raised for the first time at oral argument. Id.; see also *O'Donnell* v. *Waterbury*, 111 Conn. App. 1, 4–5, 958 A.2d 163, cert. denied, 289 Conn. 959, 961 A.2d 422 (2008); *State* v. *Booker*, 28 Conn. App. 34, 38–39, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992), cert. denied, 507 U.S. 916, 113 S. Ct. 1271, 122 L. Ed. 2d 666 (1993). Because we disagree with the plaintiff's jurisdictional argument, the defendant is not prejudiced by our consideration of the issue notwithstanding it was not raised until the time of oral argument in this appeal.

We begin by setting forth the relevant legal principles. "[S]ubject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without

jurisdiction . . . . Furthermore, [j]urisdiction of the [subject matter] is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. . . . Stated differently, [a] court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it." (Citations omitted; internal quotation marks omitted.) *Karen* v. *Loftus*, 228 Conn. App. 163, 175–76, 324 A.3d 793, cert. denied, 350 Conn. 924, 325 A.3d 1094 (2024); see also *Carpenter* v. *Daar*, 346 Conn. 80, 104 n.18, 287 A.3d 1027 (2023); *Parisi* v. *Niblett*, 199 Conn. App. 761, 771–72, 238 A.3d 740 (2020). Indeed, this court has recognized that "all civil matters . . . fall within the subject matter jurisdiction of the Superior Court." (Emphasis omitted; internal quotation marks omitted.) *In re Shonna K.*, 77 Conn. App. 246, 253, 822 A.2d 1009 (2003); see also *Kleinman* v. *Chapnick*, 140 Conn. App. 500, 504 n.6, 59 A.3d 373 (2013).

The plaintiff has not presented us with any authority to support his claim that the trial court lacked competency to adjudicate the defendant's special motion to dismiss brought under our anti-SLAPP statute. Instead, he has confused the court's authority to act with its subject matter jurisdiction. See *O'Bryan* v. *O'Bryan*, 67 Conn. App. 51, 53, 787 A.2d 15 (2001), aff'd, 262 Conn. 355, 813 A.2d 1001 (2003); see also *Hepburn* v. *Brill*, 348 Conn. 827, 838, 312 A.3d 1 (2024). As our Supreme Court recently has explained, "[a]lthough related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute. . . . *In other words, there is a distinction between a trial court's jurisdiction and . . . the correctness of a decision made by a tribunal in the course of its exercise of its jurisdiction.*" (Citation omitted; emphasis altered; internal quotation marks omitted.) *Torrington*

*Tax Collector, LLC* v. *Riley*, 354 Conn. 66, 78, 349 A.3d 551 (2026); see also *Hebrand* v. *Hebrand*, 216 Conn. App. 210, 217 n.7, 284 A.3d 702 (2022). This distinction is important because a "judgment rendered by a trial court that lacked jurisdiction is not merely voidable but void ab initio and, therefore, subject to attack at any time." (Emphasis omitted.) *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 463–64, 239 A.3d 272 (2020). The plaintiff's argument in the present matter, however, properly is characterized as a challenge to the manner in which the court exercised its authority to act in regard to the anti-SLAPP proceedings brought by the defendant rather than its power to hear and determine such matters. We therefore reject the plaintiff's claim that the trial court lacked subject matter jurisdiction in the present case.

At oral argument, the plaintiff referred to this court's recent decision in *Black Rock Gardens, LLC* v. *Berry*, 224 Conn. App. 379, 312 A.3d 588 (2024), as support for his jurisdictional claim. In that case, the defendant appealed from the trial court's denial of his special motion to dismiss. Id., 380. We stated that the issue on appeal was whether the denial of a special motion to dismiss filed pursuant to § 52-196a (b) constituted an appealable final judgment. Id., 383. This court relied on a trilogy of decisions[19] from our Supreme Court that concluded (1) "our anti-SLAAP statute affords a defendant a substantive right to avoid litigation on the merits" and (2) "in cases in which a defendant can assert a colorable claim that a trial court's denial of a special motion to dismiss under that statute has placed that particular right at risk, an immediate appeal may be taken pursuant to the second prong of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983)." (Internal quotation marks omitted.) *Black Rock Gardens*, *LLC* v. *Berry*, supra, 384–85.

In *Black Rock Gardens, LLC*, we explained that the defendant had failed to assert a colorable claim to the

[19]See *Robinson* v. *V. D.*, 346 Conn. 1002, 293 A.3d 345 (2023); *Smith* v. *Supple*, 346 Conn. 928, 293 A.3d 851 (2023); *Pryor* v. *Brignole*, 346 Conn. 534, 292 A.3d 701 (2023).

protections of our anti-SLAAP statute because his complaint was not based on the exercise of his first amendment rights. Id., 385; see also *Smith* v. *Supple*, 346 Conn. 928, 952, 293 A.3d 851 (2023) (dispositive inquiry into whether denial of special motion to dismiss under § 52-196a is appealable final judgment under second prong of *Curcio* is whether defendant can assert colorable claim of right to avoid litigation under anti-SLAAP statute). Accordingly, we concluded that *the defendant was not entitled to an immediate review* of the denial of his special motion to dismiss and, therefore, *this court lacked subject matter jurisdiction over his appeal. Black Rock Gardens, LLC* v. *Berry*, supra, 224 Conn. App. 384–87.

It is readily apparent that the present matter is distinguishable from the facts and analysis set forth in *Black Rock Gardens, LLC*, and, therefore, the plaintiff's reliance on that case is misplaced. Specifically, the plaintiff in this appeal, which involves the *granting of the defendant's special motion to dismiss*, asserts that the *trial court lacked subject matter jurisdiction* to proceed under this statutory scheme. The issue in *Black Rock Gardens, LLC*, which arose from the defendant's appeal from the denial of a special motion to dismiss, concerned *our appellate jurisdiction*, which requires appeals to be taken from a final judgment or an otherwise interlocutory order that satisfies *Curcio*. See id., 385 n.4. For these reasons, we reject the plaintiff's contention that our decision in *Black Rock Gardens, LLC*, supports his claim that the trial court lacked subject matter jurisdiction in the present case to proceed under § 52-196a.[20] We further conclude that the plaintiff has challenged the

[20]We emphasize that a "*special motion to dismiss* filed pursuant to § 52-196a . . . *is not a traditional motion to dismiss based on a jurisdictional ground.*" (Emphasis added; internal quotation marks omitted.) *Robinson* v. *V. D.*, 229 Conn. App. 316, 337, 328 A.3d 198 (2024); see also *Aguilar* v. *Eick*, 234 Conn. App. 281, 284, 344 A.3d 263, cert. granted, 353 Conn. 925, 345 A.3d 811 (2025); *Mulvihill* v. *Spinnato*, supra, 228 Conn. App. 788 n.12; *Chapnick* v. *DiLauro*, 212 Conn. App. 263, 269, 275 A.3d 746 (2022); *Elder* v. *Kauffman*, 204 Conn. App. 818, 824, 254 A.3d 1001 (2021).

manner in which the trial court exercised its authority pursuant to §52-196a, rather than its power to hear such matter. His claim that the court lacked subject matter jurisdiction, therefore, must fail.

B

Next, we turn to the plaintiff's myriad of constitutional challenges to §52-196a. We conclude that the plaintiff, by failing to raise such claims in a timely fashion, has waived them. Accordingly, we decline to consider the merits of the plaintiff's assertions regarding the constitutionality of our anti-SLAAP statutes.[21]

The following additional facts are necessary for our discussion. In their August 22, 2024 posthearing memorandum, the plaintiffs argued that §52-196a is unconstitutional both on its face and as applied to them. Specifically, the plaintiffs claimed that (1) they improperly were deprived of their right to a jury trial and (2) the statute's fee shifting provisions violated their right to petition the court.

In its October 3, 2024 memorandum of decision addressing the defendant's motion for attorney's fees and costs, the court noted that the plaintiffs had challenged the constitutionality of the anti-SLAAP statutory scheme on its face and on an as applied basis[22] for the first

[21]We note, nonetheless, that, in *Robinson* v. *V. D.*, 229 Conn. App. 316, 345, 328 A.3d 198 (2024), this court rejected the plaintiffs' claim that "§52-196a is unconstitutional, both facially and as applied, because it requires the court to make factual findings and, thus, deprives them of their federal and state constitutional rights to a jury trial and to petition for grievances." See also *Gifford* v. *Taunton Press, Inc.*, Superior Court, judicial district of Danbury, Docket No. CV-18-6028897-S (July 11, 2019) (rejecting various challenges to constitutionality of §52-196a).

[22]"A facial challenge, as compared to an as applied challenge is not dependent on the facts of a particular case." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Ardizzone*, 230 Conn. App. 187, 217–18 n.14, 330 A.3d 231, cert. denied, 351 Conn. 920, 333 A.3d 104 (2025). In contrast, for an as applied challenge, a court determines the constitutionality of a statute in the context of the facts of that particular case. See *State* v. *Long*, 268 Conn. 508, 522 n.21, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004).

time in a posthearing brief. It declined to consider the plaintiff's untimely constitutional challenges.

"Connecticut's appellate courts often have recognized that they are not obligated to consider claims not distinctly raised at trial and decided by the trial court. . . . This admonition is equally applicable to constitutional claims." (Citations omitted.) *36 DeForest Avenue, LLC* v. *Creadore*, 99 Conn. App. 690, 704, 915 A.2d 916, cert. denied, 282 Conn. 905, 920 A.2d 311 (2007). In *36 DeForest Avenue, LLC*, the trial court held a hearing on the plaintiff's motion to discharge or reduce the defendant's mechanic's lien. Id., 703. That proceeding focused on the determination of the validity of the mechanic's lien, the bulk of which "was devoted to witness testimony and other evidence pertaining to . . . the nature and timing of the work performed by the defendant . . . ." Id. The plaintiff did not raise a claim regarding the constitutionality of the mechanic's lien statutes until the end of the brief argument it made following the conclusion of evidence. Id., 703–704. On appeal, we declined to address the plaintiff's "casual and incomplete" constitutional challenge. Id., 704–705. We further noted that, given the interlocutory nature of that appeal, the plaintiff retained the ability to pursue the claim in a different proceeding. Id., 705.

Likewise, in the present case, the plaintiff belatedly challenged the constitutionality of § 52-196a. He did not raise these matters during the proceedings before the trial court when it determined the merits of the special motion to dismiss or properly pursue such claims in the two appeals filed following the granting of the special motion to dismiss. The plaintiff also failed to present his constitutional claims to the trial court at the time of the hearing on the defendant's § 52-196a (f) (1) motion. We agree with the trial court that, as a result of the untimely manner in which the plaintiff has asserted his constitutional claims, he has waived the right to do so.[23]

---

[23]To the extent that the plaintiff has raised constitutional claims on appeal that were not made in any fashion before the trial court, we

## II

The plaintiff next claims that the court improperly granted the defendant's motion for attorney's fees and costs. Specifically, he argues that the court **(1)** improperly concluded that the defendant was entitled to such an award despite the ultimate payment of her legal fees by her insurance company, and **(2)** misapplied the *Johnson* factors in determining the amount of the attorney's fees and costs awarded to the defendant. We are not persuaded.

The following additional facts are necessary for the resolution of this claim. Following the granting of her special motion to dismiss, the defendant filed several motions for attorney's fees pursuant to § 52a-196 (f) (1). The defendant filed a postappeal supplemental motion for attorney's fees and litigation costs on October 12, 2023. Therein, she argued that, as a result of the granting of her special motion to dismiss, she statutorily was entitled to all costs and reasonable attorney's fees. As detailed in the attached affidavit of counsel, the defendant claimed accrued attorney's fees of $91,698 and litigation costs of $2807.28 for a total of $94,505.27.[24]

In response, the plaintiff moved for summary judgment. Therein, he argued, inter alia, that the two requirements of § 52-196 (f) (1) had not been met. First, the plaintiff asserted that the defendant had not incurred fees and costs with respect to the special motion to dismiss because her insurance company, Chubb Insurance, was obligated to pay these items. Second, the plaintiff

---

conclude that such extraordinary review is not warranted due to his failure to adequately brief a request for review, in name or substance, pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). *State* v. *Nathaniel T.*, 230 Conn. App. 45, 52, 329 A.3d 285 (2024); see also *State* v. *Abramovich*, 229 Conn. App. 213, 217–19, 326 A.3d 593 (2024).

[24]See *Bruno* v. *Whipple*, 215 Conn. App. 478, 497–99, 283 A.3d 26 (2022) (party seeking attorney's fees by contract or under statute must demonstrate reasonableness of such request with appropriate evidentiary showing).

argued that the defendant improperly was the moving party seeking attorney's fees and litigation costs on behalf of Chubb Insurance.

Following a hearing,[25] the court granted the defendant's motion for attorney's fees and costs and denied the plaintiff's motion for summary judgment in its October 3, 2024 memorandum of decision. In rejecting the plaintiff's argument that the conditions of §52-196a (f) (1) had not been satisfied, the court observed that the statutory term "moving party" referred to a person or entity that made the special motion to dismiss and that the defendant, not Chubb Insurance, had filed the motion for attorney's fees and costs. It then explained: "[The plaintiff] would have the court read into the statute a requirement that the moving party must have actually paid or be personally liable for payment of the fees, costs and expenses incurred in the lawsuit for them to be recoverable . . . . If so, that would eliminate recovery of 'incurred' fees and expenses paid by others including insurers, parents, spouses, trusts, estates, employers, associations etc. That would blast quite a hole in the protections afforded [to] those who were unfairly drawn into SLAPP suits for the exercise of protected rights." It further stated that the plaintiff's interpretation would benefit parties whose lawsuit had been dismissed pursuant to §52-196a (e) (3) by relieving them from the associated costs and fees simply because they had been paid by a third party. The court further explained: "There is no indication that the legislature intended to shift the ultimate burden of incurred costs and fees from the losing party to innocent third parties who actually paid or are liable for payment of costs and fees incurred in defense of the SLAPP suit." The court then reasoned that the phrase "incurred" in §52-196a (f) (1) referred not to the costs and fees awarded but rather to the "work done." Finally, the court, after considering the applicable *Johnson* factors, determined that the amount of attorney's fees and costs sought by the defendant was reasonable.

[25]The plaintiff has not provided this court with a transcript from the July 15, 2024 hearing held by the court on the parties' motion regarding the issue of attorney's fees and costs.

## A

On appeal, the plaintiff claims the court misapplied §52-196a (f)(1). Specifically, he argues that "the plain meaning of the statute narrowly confines fee reimbursement to (1) a moving party that (2) has actually incurred fees." He contends that Chubb Insurance, and not the defendant, incurred the attorney's fees and costs and that Chubb Insurance was not the moving party. For these reasons, the plaintiff contends that the court improperly granted the defendant's motion for attorney's fees and costs. The defendant counters that the plaintiff's interpretation imposes requirements that are not present in the statutory language and is contrary to the purpose and plain meaning of §52-196a. We agree with the defendant.

This claim requires us to interpret the language of §52-196a (f)(1), which presents a question of law subject to plenary review. *Aguilar* v. *Eick*, 234 Conn. App. 281, 293, 344 A.3d 263, cert. granted, 353 Conn. 925, 345 A.3d 811 (2025); *Elder* v. *Kauffman*, 204 Conn. App. 818, 823, 254 A.3d 1001 (2021). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes §1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Sena* v. *American*

*Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45–46, 213 A.3d 1110 (2019); see also *Hope* v. *Willimantic Partners, LLC*, 237 Conn. App. 200, 215–16, 351 A.3d 837 (2026).

We begin with the relevant statutory text. Section 52-196a (f) (1) provides: "If the court grants a special motion to dismiss under this section, the court shall award the moving party costs and reasonable attorney's fees, including such costs and fees incurred in connection with the filing of the special motion to dismiss." By its plain language, the statute directs that, following the granting of a special motion to dismiss, attorney's fees and costs, including those incurred in connection with the filing of a special motion to dismiss, shall be awarded to the moving party by the trial court.[26] See *King* v. *Hubbard*, 217 Conn. App. 191, 210, 288 A.3d 218 (2023).

The term "incurred" is not defined in this statutory scheme. "In the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary. . . . Dictionaries in print at the time of the statute's enactment are the most instructive." (Citation omitted; internal quotation marks omitted.)

---

[26]See, e.g., *Grayson* v. *Spears, Manning & Martini, LLC*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-23-6063705-S (September 25, 2024) (defendants entitled to recover attorney's fees and costs following granting of special motion to dismiss); *Rezendes* v. *Wooley*, Docket No. CV-20-5013104-S, 2023 WL 2986691, *1 (Conn. Super. April 10, 2023) (if court grants special motion to dismiss, moving party *is* awarded attorney's fees and costs); *Primrose Cos.* v. *McGee*, Superior Court, judicial district of Waterbury, Docket No. CV-21-6062747-S (August 26, 2022) (award provision of § 52-196a (f) (1) encompasses all work performed by defendant's counsel arising from case and not merely work done in conjunction with special motion to dismiss); *Cronin* v. *Pelletier*, Superior Court, judicial district of Tolland, Docket No. CV-18-6014395-S (September 30, 2019) (statute mandates award of attorney's fees and costs following grant of special motion to dismiss).

*Stanford* v. *Nogiec*, 233 Conn. App. 862, 871, 342 A.3d 268, cert. denied, 353 Conn. 926, 346 A.3d 511 (2025); see generally General Statutes § 1-1 (a); *State* v. *Panek*, 328 Conn. 219, 229–30, 177 A.3d 1113 (2018).

In his appellate brief, the plaintiff puts forth the following dictionary definitions of the word "incur." "To incur an expense means to become liable or subject to the expense. Merriam-Webster's Collegiate Dictionary (11th Ed. [2014]) [p. 632]. To incur a cost is to sustain it or be liable or subject to it. The American Heritage Dictionary of the English Language (5th Ed. [2011]) [p. 891]." (Internal quotation marks omitted.) In a similar vein, Black's Law Dictionary defines "incur" as follows: "To have liabilities cast upon one by act or operation of law, as distinguished from contract, where the party acts affirmatively. To become liable or subject to, to bring down upon oneself, as to incur debt, danger, displeasure and penalty, and to become through one's own action liable or subject to." Black's Law Dictionary (6th Ed. 1990) p. 768.

In the present case, the defendant unquestionably incurred costs in the course of responding to and defending against the plaintiff's SLAPP lawsuit. Additionally, the defendant used the special motion to dismiss as a means to end this litigation in an expeditious fashion. Pursuant to § 52-196a (f) (1), the defendant was entitled to an award of attorney's fees and costs. To be sure, Chubb Insurance, her insurance company, ultimately assumed the financial responsibility for payment of these items. Chubb Insurance, however, would not have had to pay these attorney's fees and costs had they not been incurred in the first instance by the defendant. In other words, we disagree with the plaintiff's argument that the defendant did not incur attorney's fees and costs in the present matter.[27]

Additionally, the plaintiff's interpretation of § 52-196a (f) (1) imposes a condition or requirement—that the party

[27]We note that the defendant was the proper party to move for attorney's fees and costs under § 52-196a (f) (1), particularly in light of our

that successfully had filed a special motion to dismiss must personally be responsible for the attorney's fees and litigation costs—that simply is not found in the text of the statute. This court will not read conditions into a statute that do not exist. *Stanford* v. *Nogiec*, supra, 233 Conn. App. 877; see also *PJM & Associates, LC* v. *Bridgeport*, 292 Conn. 125, 138, 971 A.2d 24 (2009) (courts cannot change inherent meaning of words or supply additional terms to change meaning of provision at issue when interpreting statutory language); *State* v. *Fetscher*, 162 Conn. App. 145, 152, 130 A.3d 892 (2015) (legislature is aware of how to express its intent to qualify or limit operation of statute), cert. denied, 321 Conn. 904, 138 A.3d 280 (2016). As our Supreme Court recently has explained, courts must construe statutes as they are written and only the legislature may rewrite them to accomplish a particular result. *Del Rio* v. *Amazon.com Services, Inc.*, 354 Conn. 151, 172, 349 A.3d 570 (2026); see also *Housing Authority* v. *Cyr*, 234 Conn. App. 527, 541, 344 A.3d 527 (2025) (same).

Although we conclude that the plain meaning of the text of the statute adequately guides us as to its meaning, we nonetheless conclude that an examination of the statute's legislative policy supports our interpretation, and the purpose of our anti-SLAPP statutory scheme is not advanced by the plaintiff's construction of § 52-196a (f) (1). Previous decisions of our appellate courts guide this aspect of the proper construction of § 52-196a. See *Aguilar* v. *Eick*, supra, 234 Conn. App. 294. "[O]ur analysis begins with the plain meaning of the statute, although we remain mindful that we do not write on a clean slate, but are bound by our previous judicial interpretations of [the statutory] language and the purpose of [the relevant] statute[s]." (Internal quotation marks omitted.) *Airey* v. *Feliciano*, 352 Conn. 639, 646, 338 A.3d 344 (2025); see also *State* v. *Joseph V.*, 345 Conn. 516, 546, 285 A.3d 1018 (2022) (in construing statutory language, courts are bound by prior judicial interpretations and purpose of statute).

conclusion that the defendant incurred the attorney's fees and costs for the purpose of this statute.

In discussing the purpose of § 52-196a, our Supreme Court has noted, based on its citation to the legislative history, that this statute "was intended to address situations in which people have spoken out on matters of public concern including the press and we've seen situations where people file litigation. There appears to be no basis to that litigation but it's designed to chill free speech and the expression of constitutional rights, and so this provides for a special motion to dismiss so that early in the process somebody who's speaking and exercised their constitutional rights can try to dismiss a frivolous or abusive claim that has no merit and short circuit a litigation where it might otherwise cost a great deal of money to continue to prosecute." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 382 n.36, 246 A.3d 429 (2020), cert. denied,     U.S.    , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021). This court additionally has observed that § 52-196a "affords a defendant a substantive right to avoid litigation on the merits that can be costly and burdensome . . . through the dismissal of a SLAPP suit . . . [which] are by definition frivolous lawsuits . . . [and] the procedural mechanism established by [this statute] is intended to weed out meritless claims at an early stage of litigation . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Aguilar* v. *Eick*, supra, 234 Conn. App. 294; see also *Smith* v. *Supple*, supra, 346 Conn. 946 (same); *Sicignano* v. *Pearce*, 228 Conn. App. 664, 694, 325 A.3d 1127 (2024) (§ 52-196a sets forth procedural mechanism to achieve important substantive goal of protecting parties from expensive and time-consuming lawsuits by providing expedited off-ramp to avoid further litigation), cert. denied, 351 Conn. 908, 330 A.3d 881 (2025); *Chapnick* v. *DiLauro*, 212 Conn. App. 263, 269, 275 A.3d 746 (2022) (purpose of § 52-196a is to provide mechanism for early dismissal of SLAPP suits).

It is clear, therefore, that § 52-196a serves to protect defendants from the time and costs associated with the defense from meritless lawsuits. These goals are not benefited or advanced by the plaintiff's interpretation of

§ 52a-196 (f) (1). Litigating whether some third party, be it an insurance company, trust, spouse, friend, etc., may bear the ultimate financial responsibility for attorney's fees and costs in the context of § 52-196a will delay the resolution and increase the costs of such litigation, both of which are contrary to this statutory framework. Finally, we fail to see why the defendant's arrangement with her insurance company should serve as a financial windfall benefiting the plaintiff, who was found to have filed a SLAPP lawsuit, which is by definition frivolous. See *Mulvihill* v. *Spinnato*, supra, 228 Conn. App. 801. For these reasons, we conclude that the court properly determined that the plaintiff's interpretation of § 52-196a (f) (1) is not supported by the statute's plain language or the overarching purpose of § 52-196a. Accordingly, we agree with the trial court that the defendant was entitled to attorney's fees and costs under § 52a-196 (f) (1) in this matter.

B

Finally, the plaintiff claims that the court abused its discretion in determining the amount of attorney's fees and costs awarded to the defendant. Specifically, he argues that the court misapplied the *Johnson* factors in awarding the "exorbitant sum of $94,505.27." The defendant counters that the plaintiff has failed to demonstrate that the court abused its discretion and that the "thorough and well reasoned" memorandum of decision should be affirmed. We conclude that the court did not abuse its discretion in applying the *Johnson* factors[28] in

---

[28]"The [twelve] *Johnson* factors are (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases." (Internal quotation marks omitted.) *Conservation Commission* v. *Red 11, LLC*, 135 Conn. App.

awarding the defendant $94,505.27 in attorney's fees and costs.

In its October 3, 2024 memorandum of decision, the court determined that the defendant presented credible evidence regarding the amount of her attorney's fees and litigation costs.[29] It observed that this matter was "very actively litigated." It specifically stated that it considered "various *Johnson* factors in rendering its fee award to [the defendant], including the complexity and novelty of pursuing a special motion to dismiss at a time when the anti-SLAAP statute was new, the time and labor required, the background and experience of the attorneys who represented [the defendant], the reasonable rates charged as compared to rates charged by similar defense counsel in this judicial district, the magnitude of the case and the results obtained." Furthermore, the court explained that "[t]he lodestar adjustments requested by the plaintiff are not warranted. The hourly rates reflected the relative experience of the billing attorneys. Staffing where an experienced partner oversaw a less experienced associate is not uncommon. [Further] all defense costs may be recovered not just those on the special motion to dismiss. . . . That certain *Johnson* factors were not applicable is not a rationale for downward adjustment as the plaintiff urged."

We begin by setting forth the relevant legal principles. "The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights." (Internal quotation

---

765, 786, 43 A.3d 244 (2012); see also *Carrillo* v. *Goldberg*, 141 Conn. App. 299, 317 n.10, 61 A.3d 1164 (2013).

[29]On appeal, this court will not disturb the credibility determinations made by the trial court. *Glastonbury* v. *Sakon*, 184 Conn. App. 385, 394–95, 194 A.3d 1277 (2018).

marks omitted.) *Bruno* v. *Whipple*, 215 Conn. App. 478, 492–93, 283 A.3d 26 (2022); see also *Glastonbury* v. *Sakon*, 184 Conn. App. 385, 392–93, 194 A.3d 1277 (2018). In the present case, § 52-196a (f) (1) constitutes the applicable statutory exception to the American rule. See, e.g., *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 696, 258 A.3d 1268 (2021).

Next, we identify our standard of review. "It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Bruno* v. *Whipple*, supra, 215 Conn. App. 497; see also *Francini* v. *Riggione*, 193 Conn. App. 321, 329–30, 219 A.3d 452 (2019) (trial court is in best position to evaluate circumstances of each case and, therefore, Appellate Court may not alter award of attorney's fees unless there has been abuse of discretion); see generally *Laudano* v. *New Haven*, 58 Conn. App. 819, 822, 755 A.2d 907 (2000) ("No one can state the reasonable value of legal services as a fact. He can only express his opinion. The value is based upon many considerations." (Internal quotation marks omitted.)).

This court has explained that "[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. . . . The courts may then adjust this lodestar calculation by other factors [outlined in *Johnson*]. . . . The *Johnson* factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable

billing rates by a reasonable estimation of the number of hours expended on the litigation." (Internal quotation marks omitted.) *Whitney* v. *J.M. Scott Associates, Inc.*, 164 Conn. App. 420, 435, 137 A.3d 866 (2016); see also *R.I. Pools, Inc.* v. *Paramount Concrete, Inc.*, 149 Conn. App. 839, 877 n.20, 89 A.3d 993, cert. denied, 312 Conn. 920, 94 A.3d 1200 (2014).

In determining the amount of attorney's fees and litigation costs, the court began with the lodestar amount and then considered the various *Johnson* factors. See, e.g., *Ernst* v. *Deere & Co.*, 92 Conn. App. 572, 577, 886 A.2d 845 (2005); *Laudano* v. *New Haven*, supra, 58 Conn. App. 822–24. It considered and ultimately declined to apply the adjustments sought by the plaintiff. After reviewing the record and the arguments raised on appeal, we conclude that the court performed a comprehensive analysis of the attorney's fees and litigation costs requested by the defendant. We further conclude that the plaintiff has failed to demonstrate that the court's award constituted an abuse of its discretion. See, e.g., *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 801, 720 A.2d 242 (1998). We iterate that our review is limited to determining whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. We answer those questions in the affirmative and thus reject the plaintiff's challenge to the attorney's fees and litigation costs awarded in this case.

The judgment is affirmed.

In this opinion the other judges concurred.